TOWN OF BRISTOL *vs.* BRISTOL AND WARREN WATER
WORKS *et al.*

Although a court of equity might not decree a specific performance of a contract which is one simply for the sale of land at a price to be fixed by arbitrators where one of the parties refuses to appoint an arbitrator, yet where such an agreement is merely a subsidiary part of another contract for a more extensive purpose which has been partly performed so that the parties cannot be placed *in statu quo*, the court will treat the matter of determining the price of land as matter of form rather than of substance, and enforce the agreement by determining the price itself, and ordering a conveyance of the land at that price.

N. constructed a system of water works for a town under a contract by the terms of which the town granted to N., his successors and assigns, the exclusive right to use the public streets in the town for the purpose of laying and maintaining water pipes therein for the period of fifty years, and agreed to pay certain sums annually for the use of the hydrants and for a supply of water for certain purposes, with a reservation by the town of the right to purchase the water works at any time after the expiration of ten years and within fifteen years from the date of the contract at a fair and reasonable price to be agreed upon by the parties, or fixed by arbitrators to be appointed one by the town, one by N., or his representative, and the third by the two so chosen. Soon after the construction of the water works N. conveyed all his interest in the same to a corporation. Within the time limited by the contract the town voted to purchase the water works, appointed a committee with power to agree with the corporation upon a price therefor, and in default of such agreement to appoint an arbitrator for the town, and to take such other proceedings as might be necessary to procure for the town the title to the water works. The committee notified the corporation of the action of the town, requested it to agree with them upon a price to be paid by the town for the water works, and gave a similar notice and made a similar request to N. Both the corporation and N. expressly refused to attempt to agree upon a price or to appoint an arbitrator, or to convey the water works to the town.

The town filed a bill against the corporation and N. to enforce the contract. On demurrer,

*Held,* that N., having conveyed all his interest in the water works to the corporation, was not a proper party to the bill.

*Held,* further, that the court had jurisdiction to ascertain and determine through a master the price at which the water works should be conveyed by the corporation to the town, and to order a conveyance thereof to be made.

*Held,* further, that the allegation in the bill of the express refusal of the corporation to name a price for the water works or to name an arbitrator, rendered unnecessary any allegation that the town had appointed an arbitrator on its part, or that it was ready and willing to pay the price which might be fixed by arbitrators.

*Held,* further, that the corporation was estopped from denying the authority of the town to make the contract in question, and, hence, that no allegation was

necessary that the town had the legal power to raise the amount of the price to be fixed for the water works.

BILL IN EQUITY for specific performance.   On demurrer.

*March* 28, 1896.   TILLINGHAST, J.   The substantial allegations of the bill, in so far as the same·are material to the questions raised by the demurrers, are as follows, viz :—

1.   That on the 30th of January, 1882, the town of Bristol entered into a contract with the respondent George H. Norman, for the construction of a system of water works for supplying pure water to said town.

2.   That, by said contract, said town granted to said Norman, his successors and assigns, the exclusive right and use of the public streets, squares and lanes of said town for the purpose of laying water pipes, and of continuing the same therein and selling water, for the period of fifty years from and after the date of said contract, or until the town should avail itself of the option of purchase reserved to it in said contract, said town agreeing to pay to said Norman, his successors and assigns, the sum of three thousand dollars each year for the use of hydrants and the water required for fire purposes in said town, and in addition thereto a sum each year equal to the amount of all the taxes assessed in said town, by said town or the State of Rhode Island, on said water works, for a supply of water for the Rogers Free Library, the public schools, town house, town hall, fire engine house, hook and ladder house, police station, and four drinking fountains ; and that said Norman, in consideration thereof, agreed to construct a complete water works for the supply of said town, for the purpose of domestic, manufacturing and other uses, to lay pipes in all the streets in the compact part of the town and connect fire hydrants with said pipes, and·at all times to maintain a head of water not less than 125 feet above high tide, and also to furnish certain drinking fountains, and at all times maintain an ample supply of water for domestic and manufacturing purposes, at rates not higher than charged for the same at Newport, R. I.   It was further provided in said contract, and as a part of the consideration for the privileges, grants and payments aforesaid,

that said town of Bristol might at its option purchase said water works and all pipes, reservoirs, pumps and other property rights and appurtenances connected with said works, at any time after ten years and within fifteen years from the date of said contract, for a fair and reasonable price to be agreed upon by said town on the one part, and said Norman, his successors or assigns, on the other part, or fixed by a majority of arbitrators appointed for the purpose, one by said town, one by said Norman or his representative, and the third by the two so chosen.

3. That, shortly after the making of said contract, said Norman made and entered into another contract with the town of Warren for the construction of water works for the supplying of that town with water, and that, after the making of said contracts with said towns of Bristol and Warren, said Norman proceeded to construct a single system of water works for the supplying of water to both said towns, and that from thence hitherto he has supplied said town of Bristol and the inhabitants thereof with water, and has received payment therefor, in accordance with the terms of said contract.

4. That, soon after the completion of said system of water works, said Norman conveyed the same and all his right, title and interest therein, to the Bristol and Warren Water Works, a corporation created by the General Assembly, by deed duly recorded in said towns of Warren and Bristol.

5. That the qualified electors of said town of Bristol, at a meeting duly called and held after the expiration of ten years and within fifteen years from the date of said contract between the town of Bristol and said Norman, passed a vote whereby it voted to purchase of the Bristol and Warren Water Works the said water works and other property, rights and appurtenances belonging thereto, in accordance with the option aforesaid, and appointed a committee of said town with authority to agree with said company upon a fair and reasonable price for such water works, and, in default of such agreement, to appoint an arbitrator in behalf of said town, in accordance with the terms of said contract, and to

take such legal and other proceedings as might be necessary to procure for said town of Bristol the title to said water works; and that said committee, immediately after its appointment, notified said Bristol and Warren Water Works of the aforesaid action of said town, and requested said corporation to agree with them, as representing said town, upon a fair and reasonable price to be paid for said water works, and also gave such notice and made such request to said respondent George H. Norman; but that he, and the Bristol and Warren Water Works, expressly refused, and still refuse, to attempt to agree with said town upon a fair and reasonable price to be paid for such water works, and refuse to appoint an arbitrator to determine a price to be paid for such water works, in accordance with the terms of said contract, and also refuse to convey said water works to said town of Bristol.

6. That unless the complainant shall be enabled to purchase said system of water works, said Norman and said water works company and its assigns will, in accordance with the terms of said contract, continue to have and enjoy the exclusive right and privilege of maintaining a system of water works in said town of Bristol for the term of fifty years, as aforesaid, notwithstanding the vote of said town to purchase the same, and in violation of the conditions of said contract.

The prayer of the bill is that it may be ascertained, by reference to a master or in such other manner as the court may deem proper, how much and what part of said water works system the said respondents, or either of them, can convey to the complainant for use in connection with a system of water works for said town of Bristol, and how much and what part of the same it is incumbent upon the complainant to purchase and pay for, and also what is a fair and reasonable price to be paid for the same; and that said respondents, either or both of them, as the court may determine to be proper and necessary, may be ordered by decree of the court to convey to the complainant said water works, or such part thereof as it may be found that they or either of

them are able to convey and should so convey, upon payment by the complainant of such fair and reasonable price as may be determined, which price the complainant is ready and willing and offers to pay ; and for other relief.

To this bill of complaint the respondents respectively have demurred. The ground upon which the respondent Norman bases his demurrer is that it appears that, previous to the bringing of the bill in this cause, he had conveyed all his right, title and interest in said system of water works to the Bristol and Warren Water Works, a corporation created by the General Assembly of the State of Rhode Island, by deed duly recorded in the towns of Warren and Bristol, and in Bristol county in the State of Massachusetts, and hence that he has no interest in the subject matter of this suit which can make him liable to the claims of the complainant, as set forth in the bill.

We think this demurrer must be sustained. The bill seeks for no relief against the respondent Norman except that he be ordered to make conveyance of said water works ; and as it appears that he has already sold and conveyed all his right, title and interest therein to said Bristol and Warren Water Works, he is of course unable to convey the same to complainant, and hence is not a necessary or proper party to the bill.

The demurrer of the Bristol and Warren Water Works is based upon the grounds :

1. That the contract is one to convey at a price to be agreed upon, or to be fixed by arbitrators.

2. That for such price the court cannot substitute a price to be fixed by itself directly, or through the agency of a master.

3. That said bill of complaint contains no averment that the complainant has appointed the arbitrator provided for in said contract to be appointed by itself.

4. That said bill of complaint contains no averment that the complainant has appointed the arbitrator provided for in said contract and has communicated such appointment to this respondent, and—

5.   That said bill of complaint contains no averment that said complainant is ready and willing, or is ready or is willing or is able to pay the price which may be fixed by the arbitrators provided for in said contract, or that it has the legal power, either by loan or by taxation, to raise the amount of the price so to be fixed by said arbitrators.

The first and second grounds of said demurrer may properly be considered together.   The case which the record presents is this :   The town of Bristol had the right, under the contract aforesaid, to purchase the water works in question, at a price to be mutually agreed upon by the parties thereto, or, in case of a failure so to agree, to have the price fixed by arbitrators chosen as aforesaid.   It has elected to exercise said right.   The Bristol and Warren Water Works, which confessedly stands, so far as said contract is concerned, in the shoes of said Norman, with the same rights and liabilities which appertained to him, has refused either to agree upon a price for said water works or to appoint arbitrators to fix the same.   In other words, it has deliberately violated the express terms of said contract in this regard ;   and it is suggested that unless this court has jurisdiction either to compel a specific performance thereof or to grant the relief prayed for, said water works company may continue to hold said property, and enjoy the privileges and immunities secured by said contract, for the remainder of the term of fifty years, in continual violation of said contract.   But, however this may be, we think there is no doubt as to the jurisdiction of this court to grant the relief prayed for.   Said company having failed to comply with the terms of said contract in the particulars aforesaid, this court clearly has the authority to provide some means for the fixing of the price at which said water works shall be conveyed to said town, and to order such conveyance ;   and we think that the regular and proper mode to accomplish this object is by first referring the case to a master, to ascertain and determine the price at which said works shall be conveyed.

If the case was that of a simple agreement or contract for the sale of land or other property, at a price to be fixed by

arbitrators, where one of the parties had refused to appoint an arbitrator, the court probably could not, upon the application of the other party, either fix a price itself or appoint arbitrators, for the reason suggested in the demurrer, viz., that the contract being simply for a sale at a price to be fixed in a certain manner, the parties could not be compelled either to sell or to buy at a price not so fixed. Such is the English doctrine. *Milnes* v. *Gery*, 14 Ves. 400 ; *Wilks* v. *Davis*, 3 Meriv. 507 ; *Vickers* v. *Vickers*, L. R. 4 Eq. 529. The same rule has been followed in this country when there have been no circumstances to distinguish the case from *Milnes* v. *Gery.* Pomeroy on Specific Performance, § 150. The cases of *Providence* v. *St. John's Lodge*, 2 R. I. 46, and *Dike* v. *Greene*, 4 R. I. 285, would seem at first blush to establish a different rule. But in these cases the contract was to sell at a price to be fixed by appraisement, with no stipulation as to how the appraisers should be appointed. The court held in these circumstances that it could itself appoint a master to make the appraisal, and would decree a specific performance at the price so determined.

But, as well stated by complainant's counsel, where the contract to sell does not stand alone, but is merely a subsidiary part of another contract for a more extensive purpose, the performance of which has already been entered upon, a different rule prevails. In such a case the courts hold that the manner of determining the price is a matter of form rather than of substance ; and if it becomes evident that it cannot be determined in the manner provided for in the contract, by reason of the refusal of one party to do what in equity he ought to do, the court will determine it upon the application of the other. *Coles* v. *Peck*, 96 Ind. 333. In other words, if the parties have incurred obligations under the contract so that they cannot be placed *in statu quo*, the court will itself enforce the agreement. *Tscheider* v. *Biddle*, 4 Dill. 55 ; *Herrman* v. *Babcock*, 103 Ind. 461 ; *Lowe* v. *Brown*, 22 Ohio St. 463 ; *Biddle* v. *Ramsay*, 52 Mo. 153. See also Morse on Arbitration and Award, 94 ; Pomeroy on Specific Performance, §§ 148–151 ; Waterman on Specific

Performance, § 44.   See also *Flint* v. *Pearce*, 11 R. I. 576.
Pomeroy on Specific Performance, § 151, states the law applicable to this class of contracts as follows : " The second class embraces those contracts in which a mode for ascertaining the price is mentioned, but from the language of the stipulation it is regarded as non-essential, and as something rather by way of suggestion, so that the agreement itself is virtually one to sell for a fair price.   In such a case, if the means specified for fixing upon the price fail for any reason, the court does not treat the contract as fatally defective ; but will, in the suit for a specific performance, direct a fair and reasonable price to be ascertained in some manner preliminary to the decree, either by referring the matter to a master or other officer, or by appointing a skilled person as a special valuer, or even by determining the amount itself ; it will pursue any such mode as the circumstances of the case show to be expedient.   The tendency of the later English decisions is to consider these stipulations for a determination of the price by third persons rather as matters of form than of substance ; to construe them in such manner that they become incidental only to the main object of the agreement. The court will always look at the substance of the agreement, and disregard the mere forms which had been provided for effectuating it, and which cannot be made operative."   See cases cited in note 1, p. 214.   In other words, " Equity regards not the form, but the real nature of the transaction."   *Thompson* v. *Taylor*, 12 R. I. 109, 111.   The case before us is a typical one for the application of this doctrine.   The agreement to sell is clearly a subsidiary part of a much more extensive contract,—a contract by virtue of which the respondent has for nearly fifteen years enjoyed exclusive privileges in the highways of said town, and collected large sums of money from the town and its inhabitants, and by virtue of which it may continue, unless said sale can be consummated or other relief be granted, to enjoy the same exclusive and valuable franchise for the remainder of said term of years.   Nor can the complainant by any pos-

sibility be put in the position in which it was before the contract was executed.

As to the third and fourth grounds of demurrer, viz., that the bill contains no averment that said complainant has appointed the arbitrator provided for in said contract to be appointed by itself, and that it contains no averment that the complainant has communicated such appointment to the respondent, we need only say that the case shows that the respondent, in reply to a written request from a committee duly appointed by and representing the town of Bristol to arrange with said water company as to a fair and reasonable price to be paid for said water works, in accordance with the contract aforesaid, expressly declined to name a price for which it would sell said water works to said town, and also declined to appoint an arbitrator to meet the arbitrator from said town to determine upon a fair and reasonable price for said water works. In other words, the bill alleges facts which excuse the appointment of an arbitrator by the town, viz., the positive and distinct refusal of the respondent to appoint an arbitrator on its part. And it is clear that the respondent cannot be heard to object that the complainant did not make an appointment, after it had expressly notified said complainant that it refused to comply with the terms of said contract in this regard. The law does not require the performance of an utterly useless or futile act.

As to the fifth ground of demurrer, viz., that the bill contains no averment that the complainant is ready and willing or is able to pay the price which may be fixed by the arbitrators, or that it has the legal power, either by loan or by taxation, to raise the amount of the price so to be fixed by said arbitrators, we have to say that, as to the first part thereof, we do not see that any such averment is necessary. The bill is framed upon the theory that the time for arbitration has already passed. The respondent, as before stated, has expressly refused either to name a price or to submit the fixing thereof to arbitrators, as provided in the contract. That the complainant was so ready and willing before the respondent refused to arbitrate appears from its vote to pur-

chase, under the conditions of the contract which required it to pay the price fixed by arbitration, and by the action of its committee as aforesaid ; and it avers that it is now ready and willing to pay the price which shall be determined under the direction of the court.    We fail to see that the complainant is in any default whatsoever in the premises, or that it can properly be called upon to do anything more than it has already done in order to entitle it to the relief prayed for.

As to the objection that the bill contains no averment that the complainant has the legal power to raise the amount of the price to be fixed, we think it clear that no such averment is necessary.    The contract provides that the town may purchase ; and the respondent cannot be permitted to set up, as an excuse for its refusal to carry out said contract, that the town has not the power to purchase.    It cannot treat a part thereof as binding and reject the rest.    In short, having entered into said contract, the respondent is estopped from denying that the town had authority to make the same. See Herman on Estoppel, §§ 749, 764, 800, and cases cited. Moreover, the mere fixing of the price to be paid for said water works will not divest the respondent of its property therein, or in any way prejudice its rights in connection therewith.    It will simply be a step in the direction of carrying out the contract of purchase.    But not until the price which shall be fixed shall have been paid by the complainant, will the property rights of the respective parties be other or different from what they now are.    We are therefore of the opinion that the demurrer of said water works company is not well founded, and that the same should be overruled.

*Richard B. Comstock & Rathbone Gardner*, for complainant.

*Arnold Green & Benjamin M. Bosworth,* for respondents.