### CITY OF FAYETTEVILLE v. FAYETTEVILLE WATER, LIGHT & POWER CO.

(Circuit Court, E. D. North Carolina. February 18, 1905.)

SPECIFIC PERFORMANCE—CONTRACT BY WATER COMPANY TO SELL PLANT TO CITY—INFORMALITY IN APPRAISEMENT.

Where the grant by a city of a franchise to a water company was conditioned by an agreement that the city should have the right, at its option, to buy the company's plant at the end of 10 years, a provision of the agreement for the appointment by each party of an appraiser, who, with another selected by them, should fix the value of the property, did not make such appraisement a fundamental condition to the city's right to exercise its option, but it was merely an administrative detail, the purpose of which was to ascertain the fair market value of the property; and, the city having the absolute right to enforce the condition on which the franchise was granted on complying with the provision on its own part, the company cannot avoid carrying out its contract by repudiating an appraisement, fairly made, on the ground that the appraiser selected by resolution of its directors, and who was its general manager, substituted another in his place, to which it never gave its formal assent, where its officers and counsel, with full knowledge of the substitution, participated in the appraisement proceedings without objection.

In Equity. Suit for specific performance of a contract.

N. A. Sinclair, I. A. Murchison, and Q. K. Nimocks, for complainant.

Rose & Rose, H. L. Cook, and C. W. Broadfoot, for defendant.

PURNELL, District Judge. Suit for specific performance of a contract was commenced in the state court and removed to this court, where the pleadings were completed, and the cause referred to the master to find the facts and state his conclusions of law. The report being filed, the cause was heard February 2, 1905. Counsel asked time to file additional briefs, which was granted, and, the time having expired, briefs being filed, the cause is in condition to be disposed of.

The facts as gathered from the report of the master are as follows:

On the 7th day of December, 1892, the city of Fayetteville entered into an agreement, and granted a franchise to Garwood Ferris and H. Dec. Richards, by which said Ferris and Richards were authorized to construct, maintain, and operate a system of waterworks in the city of Fayetteville. About the 1st of July, 1893, this franchise was assigned to the defendant, subject to all the conditions, duties, and obligations therein contained. Section 13 (the only one involved in this litigation) of the contract or franchise is as follows, to wit:

"At the expiration of ten years after the completion of said works, and at the expiration of each succeeding period of ten years thereafter, the said City shall have the right and privilege to purchase said system of waterworks, provided they notify the said grantee or assigns of their intention so to do at least one year before the expiration of said period of years.

"The value of said system shall be ascertained as follows:

"The said grantee or assigns and the said City shall each appoint one person and the two appointees shall choose a third, and the three thus chosen

shall constitute a board to determine the value of said system of water-works.

"In case the two experts chosen disagree in the selection of a third, he shall be appointed by the Circuit Judge of adjoining circuit. None of the board shall be residents of the city of Fayetteville. The said Board in fixing the value of said works shall take into consideration the value of the franchise, the value of water rights, the right of way, the revenue from the works, and all other facts and considerations legitimately connected with the said works. The said City shall within thirty days after the said Board has rendered its decision, pay the amount awarded in cash and upon such payment said grantee or assigns shall transfer to the City all rights and privileges and property included in the same appraisement. In case the City of Fayetteville shall fail or decline to exercise its option to purchase said works, the rights and privileges thereby granted to the said grantee or assigns shall be extended to said grantee or assigns for a further period of twenty years."

More than a year before the 10 years expired, the plaintiff notified the defendant of its intention to avail itself of the option to purchase the plant, and afterwards that it had appointed an appraiser; requesting defendant to appoint an appraiser, as provided in said section 13. Both notices were in apt time and due form.

Under the following resolution, defendant acted, to wit:

"Special meeting of board of directors held at office of the president, Weldon building, Jersey City, June 29th, 1903. Present: Stephen Morgan, Garwood Ferris and R. L. Lawrence.

"On motion, the following resolution was adopted:

"Whereas, the city of Fayetteville has notified this company that it intended to avail of the option to purchase the plant of the company on July 1st, 1903, as empowered so to do under the franchise under which this company is operating; and

"Whereas, it has further notified this company that it will appoint an appraiser to meet a like appraiser to be appointed by this company to meet at Fayetteville July 1st, 1903.

"Resolved: That H. Dec. Richards is hereby appointed with full power to act for this company as its appraiser"

On July 1st, when Richards met the water committee, he stated the appraiser appointed on the part of the complainant was accepted, and, as general manager of defendant, he accepted the appointment as appraiser on the part of the defendant. He then read a paper substantially the same as the above resolution with the addition "that he [Richards] was appraiser and anything that he would do in the matter would be perfectly satisfactory to the company." Richards retained possession of the paper found to have been read, and no other resolution than the one above recited, by the defendant corporation, was found on the records thereof.

The master finds "that whatever may have been read, or apparently read, or interpolated, by the said Richards, or added by Ferris, the secretary and treasurer, in addition to what is contained in the above resolution, was without the authority of the board of directors; the said resolution being the only one shown to have been adopted by the said board before the appraisal in reference to the appointment of an appraiser or his authority." This is the basis of exceptions by complainant.

Richards was questioned as to his interest; and it appearing he was the owner of one share of stock, and had been general manager of the defendant corporation from its organization, for which

services he had not been, but expected to be, paid, objection was made to his serving as appraiser. The city authorities declined to recognize him as such, when he selected W. L. Holt, who was accepted by the city as an appraiser. The two appraisers then selected on July 1, 1903, appointed W. F. Robertson the "third man," and the three on August 4, 1903, valued the complete waterworks at $79,000. On August 5, 1903, the city, by ordinance, accepted this valuation, and directed the mayor to serve a copy of the ordinance on the company. This was done, and on August 8, 1903, the defendant company replied, repudiating said award; declaring it was of no binding effect. On August 13, 1903, complainant, at the office of defendant, in Jersey City, N. J., tendered the price fixed, which the defendant declined to receive. There was no formal notice of the substitution of Holt for Richards as an appraiser served on defendant company. Ferris, the secretary and treasurer, Richards, the general manager, Ledbetter, the local superintendent, and the counsel for defendant, had knowledge of what was being done; and, except Ferris, all were present and participated in the proceeding before the appraisers. The counsel were paid by the company, and statistics, figures, and estimates furnished by Ferris to Richards were used on the hearing. The city had no notice of any objection to the appraisers or the award until the letter of August 8th, before referred to, was received. When he first arrived in Fayetteville, and before the meeting at which Holt was substituted as an appraiser, Richards attempted, as authorized and instructed by Ferris at the time of his appointment, to settle the price with the city authorities, and offered to take $120,000 for the plant. The master finds:

"Mr. Richards has been a stockholder of the defendant company and its general manager since its organization, some ten years ago, and his name is still printed as general manager on the letter heads of the home office of the company. Until he removed to California, some four or five years ago, he, in connection with Mr. Gardwood Ferris, a director and the secretary and treasurer, had the management of the defendant company. After his removal to California (that is, for the last four years), Mr. Ferris has had the management of the company; the position of Mr. Richards as general manager since his removal to California being merely nominal, with the exception that he has been occasionally consulted by correspondence about several important matters. He came from California at the request of Mr. Ferris to act for the company in the matter of the appraisal, and shortly after reaching New Jersey, June 27th, was appointed its appraiser by the resolution hereinbefore set forth, dated June 29, 1903. Mr. Ferris told Mr. Richards that he hoped he would do all he could to get the matter closed quickly, and not to try to get all he thought was due, but to meet the city as far as possible on anything that may be reasonably fair. He also told him to do all he could to get the matter settled before he went West again, and not to put any stone in the way of settlement if he could avoid it; that they left it to him to get any cash settlement, and to try to arrange this without the delay and expense of arbitration. On the night of June 30, 1903, before the formal meeting, Mr. Richards had a conference with the water committee, at which he said he would take $120,000. This was declined by the city, and the conference ended with the understanding that each party would name an appraiser at the formal meeting on the 1st of July."

The above are the facts found as culled from the report of the master, much of said report being argumentative and in the alternative.

The master then states his conclusions of law:  First, that, the appraisement "being fundamental," the defendant is not bound by the award, either by having assented thereto before or after said appraisement; and, second, in the following words:

"Should the court, however, take a different view, and be of the opinion that the acts and conduct of the said officers and attorney are binding upon the defendant company, then the master is of the opinion that such acts and conduct clearly amount to a waiver of any objection on the part of the defendant company to the substitution of Mr. Holt for Mr. Richards, that it is estopped to question the validity of the said award, and that the same should be enforced."

The complainant filed 27 exceptions to the findings of the master touching the facts, and 9 exceptions to the conclusions of law.  The court does not deem it necessary or expedient to notice these exceptions in detail, but regards the question which meets a consideration of the case at the threshold as solving many questions raised by the numerous exceptions.  Looking to the contract or franchise for the intention of the parties, and calling it a contract, agreement, or franchise, it amounts to this:  That the city of Fayetteville, for the advantages of having a system of waterworks, granted to defendant a part of its sovereignty on certain conditions; one of the conditions being that set out in section 13 of the original contract.  Analyzing this section, but one conclusion can be reached; and that is that the condition precedent to the contract on the part of the city was that at the end of 10 years, on its compliance with its part of the agreement, there was a sale of the entire plant of the defendant corporation.  This is the fundamental principle in the agreement or franchise touching the sale.  The city in apt time and in due form gave notice that it claimed this option or sale—whichever it may be called—and there is no question about the city's compliance with its part of the contract in this respect.  Incidentally and subordinate to this agreement was a stipulation that the price should be fixed as set forth in the second paragraph of section 13 of the original contract and franchise.  When it came to this, defendant, having interposed no objection up to this point, designated one of the original contractors, Richards (the general manager of the corporation, who, with Ferris, seems to have been as much in control of the corporation as when these two were the sole contractors under the original contract), as one of the appraisers to fix the price.  Upon objection, Richards retired, and named a substitute, and here the complication of affairs commenced.  This was on July 1st, and the appraisers more than a month thereafter, on August 4th, valued the complete waterworks at $79,000; and the city accepted this valuation, tendered the money, and has manifested throughout a disposition to comply with its part of the contract.

It seems that Richards had full power to act for the company as provided in the resolution.  He had, and was recognized as having, authority to bind the company in all matters touching the subordinate question of fixing the price.  As said above, the sale was complete and absolute under the contract, agreement, or franchise; the city having complied with all the obligations it had assumed, of which there is no complaint.

In Bristol v. Bristol & Warren Waterworks (R. I.) 34 Atl. 359, 32 L. R. A. 740, in which the contract is almost identical with that sued upon in this case, it is held that the arbitration is not fundamental, but is in effect an agreement that the price shall be a fair one; that the complainant cannot be placed in statu quo, and has no adequate remedy in damages. The only condition under the contract to effect the sale of the property was the exercise by the complainant of its option to purchase at the end of the 10-year period. Upon the exercise of this option the contract became, eo instante, executed, and the sale was perfected. The contract not having contemplated anything but a fair market value, it was not of the essence of the contract how this should be ascertained, as this was a matter of detail, subordinate to the fundamental provisions thereof. If the arbitration, for any reason, failed, the court would itself ascertain the value of the property, and would base its action on the ground that the fixing of a fair market price was a matter of detail, and not fundamental or of the essence of the contract. Then, if the fixing of the value in the case at bar is not of the essence of the contract, but merely subsidiary to the contract itself, the appointment of the arbitrators was not a vital or fundamental act, but was an act of administrative detail, incident to the contract itself, and the acts of defendant's agents, officers, and attorney in constituting and conducting said arbitration were such as were binding upon the defendant corporation, and by such acts it waived any alleged irregularity, and is estopped and bound by the award. If the defendant in the case at bar had refused to name an arbitrator, the court would itself have ascertained the value of the property; but inasmuch as the arbitrators were appointed by the agents and officers of the defendant, and the defendant was fixed with notice of such appointment, and did not object or repudiate such appointment, but actually, through its agents, officers, and attorney, appeared and participated in such arbitration 34 days after said appointment, and by its silence and representation induced the complainant in good faith to do the same, the defendant is bound by the award.

There is no suggestion that the arbitrators were not fair, impartial, honest, and competent; and, this being so, the court will not say the award is not for a fair price. The same rule applies to arbitrators as to jurors. A party cannot be heard to complain that he did not have an opportunity to get a juror partial or biased in his favor. The only right he has is to have jurors competent, fair, and impartial.

The city parted with its sovereignty to defendant for only a limited time, reserving the right to resume its sovereignty, and limiting the right of way given defendant in its streets, so that, upon such limitation taking effect, the defendant could no longer do business as a water company.

Defendant filed no exceptions to findings of fact, and the master did not find the value of the property.

The court, therefore, taking this view of the matter, reverses the master as to the first conclusion of law, and holds that the fixing of the price of the plant was not fundamental, but was administrative and incidental to the sale, which was complete under the contract. The court, therefore, taking a different view, and being of the opinion that

the acts and conduct of the said officers and attorney was binding upon said defendant company, concurs in the opinion of the master that such acts and conduct amount to a waiver of any objection on the part of the defendant company, and that it is estopped to question the validity of said award, and that the same ought to be enforced. This conclusion removes the necessity of considering any of the numerous exceptions, since, upon the finding of the facts by the master, though to some extent unsatisfactory, the court reverses the master on his conclusion of law, and directs a different decree than would be entered were he sustained, and affirms the second conclusion of law as stated by the master. In short, the court holds that the sale was complete under the contract, and the fixing of the price was subordinate, not fundamental—hence reverses the master on his first, and affirms him on his second, conclusion of law. The exceptions by the defendant are ignored, without prejudice, as, in the view which the court takes of this controversy, the consideration thereof is unnecessary.

A decree will be drawn and entered accordingly.