TOWNSHIP OF BANGOR *v.* BAY CITY TRACTION & ELEC-
TRIC CO.

1. Highways and Streets — Encroachment — Street Railroad
—Abatement—Chancery Jurisdiction.

A township may maintain a bill to remove a street railroad
built in one of its highways without the consent, and against
the repeated protests, of the township authorities, sections
4121–4126, 2 Comp. Laws, providing a legal remedy for en-
croachments upon highways, not being intended to apply to
such a case.

2. Estoppel—Townships—Officers—Encroachments on High-
ways.

Failure of the officers of a township to take steps to prevent
the unauthorized building of a street railroad in its highway,
or acquiescence therein, does not estop the township from
maintaining a bill in chancery to compel removal of the
tracks.

Appeal from Bay; Collins, J.   Submitted November
16, 1906.   (Docket No. 129.)   Decided February 5, 1907.

Bill by the township of Bangor and Andrew Carlson,
highway commissioner, against the Bay City Traction &
Electric Company to enjoin an encroachment upon a
highway.   From a decree dismissing the bill, complain-
ants appeal.   Reversed, and decree entered for com-
plainants.

*Pierce & Kinnane*, for complainants.

*T. A. E. & J. C. Weadock*, for defendant.

Hooker, J.   The defendant purchased a street railway
constructed in a highway, within the township of Bangor,
in Bay county.   The township files this bill alleging that
the railway was built without the consent, and against
the repeated protests, of the township authorities, and has

been so maintained and operated ever since. It prays the removal of the road. A hearing was had upon the merits, on pleadings and proofs taken in open court, and the bill was dismissed upon the ground that the court of chancery has no jurisdiction in such a case, unless given by statute; that the only statute upon which jurisdiction can be predicated is 1 Comp. Laws, § 433, and that such statute applies only where an encroachment is shown; that this statute was not intended to modify the rule that where the law affords a plain, speedy, and adequate remedy, such remedy should be sought, instead of a remedy in equity, and that an adequate legal remedy is provided by 2 Comp. Laws, §§ 4121-4126. As a further ground, the learned circuit judge said that the case was within the rule followed in the cases of *Township of Lebanon* v. *Burch*, 78 Mich. 641, and *Township of Greenfield* v. *Norton*, 111 Mich. 53.

We infer from the defendant's brief that the testimony sustains the bill upon the point that the railway was built without obtaining authority from the township in the way pointed out by statute, but defendant seems to rely on an estoppel, based on the acquiescence of the officers of the township, or failure to take steps to prevent the construction of the railway. The testimony shows that the construction of the railway began in 1889. The highway commissioner was informed that work was being done in the highway, and a meeting of the township board was held soon after to consider what should be done, and the board looked over the premises where the work was being done. The record of this meeting shows:

"Before calling the meeting to order the board proceeded to examine the highway between sections 9 and 10, town 14 north, range 5 east, pursuant to the request of the highway commissioner of the township of Bangor, and ascertained the following facts, viz.: The West Bay City Street Railway Company is constructing a street railway on the highway running north and south between said sections, using dirt from near the center of the highway for the construction of said railway, and grading on

the east side of said highway, and whereas said railroad proposes to secure lands on the west side of the said highway to widen the highway, and the people adjoining said highway are satisfied, therefore it is

"*Resolved*, That the board take no action at the present and leave the consideration for some future date.

"Carried."

The supervisor had some talk with officers of the company, and was informed that it was its intention to buy as much land on the west side of the highway as it was using of the highway on the east side, and to widen the highway to that extent, and this project was talked over at the meeting. Action was purposely deferred to see if that should be done. The railway company proceeded to complete the railway. It neither bought the land nor widened the street. The township officers complained several times about the condition of the highway, but could get nothing done. The township board took no further action until some years after.

In June, 1902, notice was served by the township authorities on the receivers of the railway company demanding a removal of the road from the highway, for reasons enumerated in the notice. On August 14, 1902, Mr. Weadock, the managing receiver of the railway company, and in charge and control of the business of the company, had some negotiations with the township officers upon his application, and was present at one or more meetings of the township board, and these negotiations resulted in the granting of a franchise for a railroad along the highway in question, to the United Traction Company, its successors and assigns, upon terms and conditions stated therein. The record of the township treats this as an application of the Bay Cities Consolidated Street Car Company "for a franchise of its road through Bangor township, on the east side of the line between sections 9 and 10 and 3 and 4." The record states the fact of the arrival of Mr Weadock, the examination of the premises upon the question of a proposed doubling of the track, and that Mr. Weadock paid the expenses of the

meeting. The record of August 16, 1902, shows a meeting on that date, and an adjournment of the meeting to August 20th, " to meet Mr. Weadock, the receiver." The record of the meeting held on August 20th is significant. It states that the township board met on that date pursuant to adjournment, to consider the terms and conditions on which "a franchise might be granted to the United Traction Company, formerly known as the 'Bay Cities Consolidated Street Railway Company' running its cars on the line of the highway " ( describing it ). It continues :

" This road was first built in 1889, by Fisher, Aplin and Magill without acquiring any right to lay their track in the highway. The first mile was then an established highway, and the second mile was private property, and now, when the township had entered an action to oust them, they apply for a franchise."

It shows that Weadock, receiver, and E. S. Dimmock, general manager, were present representing the United Traction Company, and that Mr. Weadock presented " the request of his company " for a franchise for 30 years and a right to lay a single or a double track, and to charge a 5-cent fare on these two miles. The substance of the negotiations follow. Again Mr. Weadock paid the costs of the meeting, and the franchise was agreed upon and was entered in the record. At that time it was contemplated that the road would soon be sold at receiver's sale, and the purpose of asking for the franchise was understood to be to give the purchaser a franchise under which it could operate the road, and it was given in the name of a company not then in existence, to avoid giving another later, it being expected that it would be transferred to such company as should purchase the road. The road was sold to the Bay Cities United Traction Company, a company organized for the purpose of purchasing it, and this franchise was assigned to it, without any consideration, other than reimbursing the receiver for the expense incurred in procuring it. The Bay Cities United Traction Company

was afterwards consolidated with the Traction & Power Company, under the statute, taking the name of the Bay City Traction & Electric Company. It is said that, either before or after such consolidation, it was determined not to operate the road under this franchise, and the new company has refused to comply with its terms.

The points relied on by defendant seem to be:

1. That the court has no jurisdiction of this cause, because there is an adequate remedy at law, if complainant's claim is valid.

2. That it is estopped from asking the relief sought, because of the acquiescence of its officers in the building and maintenance of the road, it being contended also that the proceedings of 1902 have no force as against this defendant.

A railway which is built in a highway without authority of law is not rightfully there, and the public has a right to have it removed, whether it be called an encroachment, an obstruction, or a nuisance. Defendants appear to contend that this is neither an obstruction nor a nuisance, for the reason that we have held that the use of public highways, by street railway companies, is a legitimate use of the highway, and does not create an additional servitude upon the land of the adjoining proprietor, and that it must, therefore, be an encroachment or a trespass; if the former, not the subject of equitable relief; and, if the latter, waived by the conduct of the officers. While a railroad, lawfully constructed on a highway, and rightfully there, cannot be held to be an unlawful obstruction of, or encroachment upon, the highway, it is an obstruction in the sense that any structure or new use may be an obstruction to its use by the public generally to a greater or less extent. Thus in the case of *Attorney General* v. *Brick Co.*, 115 Mass. 431, it was held that a track laid across the highway by the owner of lands adjacent, by the consent of the township authorities, might be an obstruction, and, if the surveyors should so determine (the surveyors being public officers authorized to de-

termine such questions), a court of equity would not review their action, notwithstanding the consent of the township authorities. The inference deducible is that, though the person who built the track owned the fee of the highway, and might use it so long as his use did not interfere with the public use (though they reserved that question), when it should appear, as matter of repair, that the railway interfered with public travel and the proper use of the highway, it was an obstruction. The case contains an intimation that such tracks might be considered inconsistent with the use of the public, but, as already said, that question was not decided. This defendant was not an adjacent landowner, and has no color of right to occupy the street except such as the statutes then in force conferred, and, in building its line, placed an obstruction in the way, of which the township authorities had a right to complain and to take measures to remove, and we hesitate to say that it may not have been a nuisance which they might ask equity to abate, for we think that it does not follow, from the recognition of a lawful street railroad, as a proper adjunct to a highway, that an unlawfully constructed one cannot be a nuisance. See Elliott on Roads and Streets (2d Ed.), §§ 644, 802, and cases cited. If it is so claimed, equity has jurisdiction to try the question, and the township may bring the suit, as we held in *Township of Merritt* v. *Harp*, 131 Mich. 174. The cases of *Township of Lebanon* v. *Burch*, 78 Mich. 641, and *Township of Greenfield* v. *Norton*, 111 Mich. 53, upon which defendant rests its contention that equity is not the proper forum to seek redress in a case of this kind, were cases of encroachment by adjacent proprietors. The opinion in the former case indicates that the court was considering cases where the landowner seeks to extend his adjacent occupancy beyond the highway line, and the discussion applied to cases where the proceeding is to settle highway lines, cases there said to be peculiarly within the jurisdiction of highway officers, and in which class of cases it was held there was no occa-

sion for resort to equity, *unless possibly under some peculiar circumstances* which cannot generally exist. See, also, *City of Grand Rapids* v. *Hughes*, 15 Mich. 54, defining encroachment. The case of *Township of Greenfield* v. *Norton*, supra, was a similar case, a barn being erected partly in the highway. We are of the opinion that if this cause can be said to be within the general rule stated in those cases, it is also within the exception suggested, and that equity may entertain a bill to determine and enforce the rights of the parties.

The defendant's alleged estoppel cannot be sustained. If private persons can create easements by estoppel, under our statute of frauds, and our decisions, or if a license may be implied from the acquiescence of a private person, who stands by and sees, without protest, his land used for a railway, the same cannot be said of township officers, who have no authority except such as the statute gives, and if it could be, the testimony does not justify such a finding. See *Goose River Bank* v. *Willow Lake School Township*, 1 N. Dak. 26. We must hold that the only authority that the defendant has is traceable to the action of the board in 1902, and it must submit to a decree in accordance with the prayer of complainant's bill, unless, within 30 days after service of a copy of this opinion, it file an election to take a decree adjudging such relief, conditioned upon its failure to accept and comply with the terms imposed by the township board in said resolution or franchise. The complainant will recover costs of both courts.

Carpenter, Montgomery, Ostrander, and Moore, JJ., concurred.