City of Sac City, Appellee, v. Iowa Light, Heat & Power Company, Appellant.

**MUNICIPAL CORPORATIONS:** Franchises—Contract Termination—Right of Franchise Holder. A city which terminates a franchise under a power reserved in the franchise ordinance may maintain an action to enjoin the franchise holder from operating under the franchise and to oust such holder; but if the city has agreed in said ordinance to purchase the property of the franchise holder in case of ouster, no writ of removal should issue until the purchase price of such property is determined.

Headnote 1: 20 C. J. p. 320.

Headnote 1: 19 R. C. L. 1162.

*Appeal from Sac District Court.*—M. E. Hutchison, Judge.

July 1, 1927.

An action to enjoin the defendants from further distributing electrical energy in the city of Sac City, and to compel it to remove its distribution system from the streets thereof. Decree for plaintiff, and defendant appeals.—*Affirmed in part; reversed in part.*

*Price & Burnquist,* for appellant.

*W. A. Helsell,* for appellee.

Albert, J.—In 1918, the city of Sac City, by proper form and procedure, granted to the Iowa Light, Heat & Power Company a franchise for a period of 20 years, to erect, maintain, and operate an electric light and power plant and distribution system within the corporate limits of Sac City, Iowa, and to use the streets and alleys and public grounds of said city to erect poles, wires, and other devices. This franchise was contained in an ordinance known in the record as Ordinance 113 of said city, and was in due time accepted by the defendant. It proceeded to advantage itself of the provisions of said ordinance from that time hence.

On November 3, 1924, the city council of said city passed a resolution, which was duly adopted, terminating all the rights of . the defendant under said Ordinance 113, and notice was accordingly served on the defendant. Among other provisions of said franchise ordinance it was provided:

"It is mutually agreed that all rights and agreements contained in this ordinance, except the right of the grantee to use the streets, alleys and public places for the construction and operation of its high-tension lines as herein provided may be terminated by the city on giving the grantee eighteen months' written notice. Said notice not to be served prior to September 20, 1921. In event the city terminates this franchise by notice on the grantee as above provided, the city agrees to purchase from the grantee all extensions, additions, or improvements, made to its distribution system in Sac City, since the date of this ordinance, including the improvements specified in Section 3, and the city shall pay the grantee therefor the actual cost thereof less the reasonable depreciation."

As the case is now presented to us, there is no question of the proper passage or adoption of said ordinance, or as to its acceptance by the company, and counsel for defendant in their argument say:

"We concede that all of the formalities required to effect the termination of the ordinance have been complied with by the city, with the exception of one important item: namely, that the city is, we say, obligated by the franchise contract itself to pay the defendant whatsoever amount is due to the defendant as the purchase price of whatever part of the distributing system of the defendant the city is obligated to purchase and pay for, in the event of the termination of the franchise under Section 13 of the ordinance. In brief, it is our contention that the city may not insist upon the effectiveness of the termination of the franchise until it does make payment of the amount due from it to the defendant."

It therefore may be accepted as a fact that, under the provisions of the franchise, the city has properly terminated all the rights of the defendant under said ordinance, except the right to maintain its high-tension lines which are provided for in said ordinance, which lines are not involved in this litigation. The contract also provides that the city agrees to purchase from the

grantee certain extensions, additions, or improvements made to its distributing system, etc.

The real contention of the defendant is that the city has no right to oust the defendant without first having paid in accordance with the above agreement; and this is the turning point in the controversy between the parties. In short, the defendant contends that it cannot be ousted unless at the same time the city purchases and pays for the extensions, additions, improvements, etc.; while the contention of the appellee is that the part of the ordinance referring to the duty of the city to purchase and pay for the additions, improvements, etc., is wholly an incidental matter, and in no way deprives the city of the right to a writ of ouster.

It is apparent from the ordinance itself that the city is given the unqualified right to terminate this franchise at any time after September 20, 1921. Having this right, it is entitled to exercise it without rhyme or reason, if it so elects. The duty of the city to purchase and pay for the aforesaid improvements is not made a condition precedent to its exercise of the right of terminating the franchise or ousting the defendant. The record does show that by resolution the city council called upon the defendant to furnish it with a list of the extensions, additions, improvements, etc., for which it claimed compensation, and in pursuance thereof such statement was made by the company; but the city claims that items were included therein that it did not contract to purchase, and that the prices charged were exorbitant. This matter will be referred to later in the opinion.

That the purchase of this property and paying for the same did not constitute a condition precedent to its right to terminate this franchise or oust the defendant is settled by the authorities. *City of Fayetteville v. Fayetteville W., L. & P. Co.*, 135 Fed. 400; Pomeroy's Specific Performance of Contracts, Sections 148-151; *Herrman v. Babcock*, 103 Ind. 461 (3 N. E. 142); *Town of Bristol v. Bristol & Warren Water Works*, 19 R. I. 413 (34 Atl. 359, 32 L. R. A. 740).

The franchise of the defendant company having been legally terminated, its occupation of the streets and public alleys and public places of said city with its poles and wires was unlawful, and therefore a trespass. That, under such circumstances, a municipality may maintain an action in equity to

compel its removal is also settled by the authorities. *Acme Fertilizer Co. v. State,* 34 Ind. App. 346 (107 Am. St. 190, 247); note to *Butler v. Frontier Tel. Co.,* 116 Am. St. 563, 585; *Town of Bangor v. Bay City Trac. & Elec. Co.,* 147 Mich. 165 (110 N. W. 490, 118 Am. St. 546).

At this point in the case another element enters, which is necessary to be considered in a full determination thereof.

In the trial of the case, defendant filed what was designated as a "cross-petition," in which it was sought to recover against the plaintiff for the value of the extensions, additions, improvements, etc., which were covered by the agreement in the franchise ordinance. This pleading and several amendments thereto were stricken from the record, on motion, because they did not state a cause of action, in that they lacked certain elements necessary to be pleaded, to state a good cause of action. The writer is of the opinion that the ruling of the lower court was correct. The majority of the court, however, think otherwise, and feel that the question of pay for these betterments was so inherently a part of the issues in the case that a determination of the amount due from the city to the company was necessary to a proper disposition of the case.

We conclude, therefore, that the action of the district court was right in enjoining the defendant from further furnishing electric energy to its patrons within the limits of said city; also that the decree of the court ordering the removal and ouster of the property of the defendant within the corporate limits of said city (except the high-tension lines) was properly entered. But in view of the fact that the amount due from the city to the company has not been determined, an order for a writ of removal and ouster should not issue until said amount so due the defendant is legally determined in this proceeding.

The ruling of the district court striking out the issue requiring the determination of the amount due from the city to the defendant is reversed, and the case remanded for determination of said amount.

Except as herein modified, the decree of the district court is, in all other respects, affirmed. The stay order herein issued is hereby canceled, and it is ordered that procedendo issue im-

mediately upon the filing of this opinion.—*Reversed in part; affirmed in part.*

All the justices concur.