## Valparaiso City Water Company et al. *v.* City of Valparaiso.

[No. 5,032. Filed February 4, 1904. Rehearing denied April 22, 1904. Transfer denied May 20, 1904.]

Municipal Corporations.—*Purchase of Water-Works.—Franchise.—Ordinance.—Construction.*—An ordinance granting a water-works franchise provided that at any time after the expiration of fifteen years from the completion of the works the city should have the right to purchase the same by giving the owners thereof one year's notice in writing. *Held,* that ownership by the city could be acquired under the contract by serving notice upon the owner one year before the expiration of fifteen years.

From Lake Circuit Court; *W. C. McMahan,* Judge.

Suit by the city of Valparaiso against the Valparaiso City Water Company and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*N. L. Agnew, Albert Baker* and *Edward Daniels,* for appellants.

*H. H. Loring,* for appellee.

Black, J.—This cause having been commenced in the Porter Circuit Court, the venue was changed to the court below. It has been transferred to this court by the Supreme Court.

In 1885, the common council of the city of Valparaiso, appellee, the plaintiff herein, adopted an ordinance author-

izing certain persons named therein, and their successors and assigns, to construct, maintain, and operate a system of water-works in and for that city, and for that purpose to locate and maintain through the streets, alleys, and public grounds of the city a system of piping, for a term of fifty years, and on the same day the persons so named duly executed and filed with the city clerk their written acceptance of the ordinance. In compliance with the provisions of the ordinance, the persons so named therein constructed and installed the system of water-works to the satisfaction and acceptance of the city, and it was completed and in operation on December 31, 1885, and was accepted, and approved by the city April 16, 1886. Afterward, September 8, 1886, the persons so authorized duly assigned all their rights and franchises under the ordinance, and all the property and plant connected with the system, to the Valparaiso City Water Company, which ever since has held and enjoyed possession, operation, and control of the same, and has operated the system, and has used and occupied, without interruption or hindrance, the streets and alleys of the city, and has enjoyed all the rents, income and profits thereof.

Section eleven of the ordinance was as follows: "At any time after the expiration of fifteen years from the completion of said water-works the city shall have the right to purchase the same by giving the owners thereof one year's notice in writing; and in case of such purchase, the city shall pay a reasonable value for the same, which shall be ascertained by three disinterested hydraulic engineers; one to be chosen by the city, one by the owners of the water-works, and the third selected by the two thus chosen. The appraisement fixed by such engineers, or, in the event they do not all agree, the appraisement fixed by any two of them, shall be conclusive and binding upon the parties as the purchase price of said water-works: Provided, that nothing shall be paid for the unexpired franchise of said" persons named in the ordinance, "their successors and assigns."

The parties have continued in substantial compliance with the contract in the operation of the water-works and the service to the city and the payment by the city of what was stipulated in the contract to be paid.   June 23, 1899, the city, by resolution of its common council, duly passed, elected to purchase the water-works of the water company as provided in section eleven, above quoted, of the ordinance, and a copy of the resolution was served upon the company, July 6, 1899, and in the written notice stating such election to purchase, transmitted with the copy of the resolution, the company was notified that the city on January 1, 1901, in pursuance of said section eleven, would select a disinterested hydraulic engineer to meet with a like engineer to be selected by the company, a third hydraulic engineer to be selected by the first two, to appraise and fix the value of the plant for the purchasing of the same, in pursuance of the provision of that section.   December 14, 1900, the city, by its common council, selected as its appraiser a certain hydraulic engineer to act for and in behalf of the city in appraising the water-works, as provided in section eleven of the ordinance, and December 19, 1900, the company was notified, by the mayor of the city, in writing, of such selection of such engineer for such purpose, pursuant to section eleven of the ordinance, and it was stated in the notice that the city would like to know as speedily as possible "whom you have chosen as an appraiser, so that the city may have time and opportunity to consider his character as to disinterestedness, and the work of appraisement proceed as rapidly as convenient."   May 11, 1901, there was served upon the company a duly certified copy of a resolution adopted by the common council of the city, May 10, 1901, referring to the resolution of June 23, 1899, and the selection of an appraiser by the city December 14, 1900, and the above-mentioned request that the company select an appraiser, and stating that the city still adhered to its said selection, and that if the company should neglect,

within ten days from the service upon it of a copy of this resolution, to make and report to the mayor or the clerk of the city a selection on its part of an appraiser to act in conjunction with the city's said appraiser, such neglect would be taken as a refusal on the part of the company to join in securing such appraisement, and, in case of such neglect or refusal, the city attorney was directed to take such action as he might deem best to enforce the rights of the city under said section. The water company having neglected and refused to choose an appraiser, or to comply with the request and notice of the city to proceed, under section eleven of the ordinance, to ascertain the reasonable value of the water-works, the appellee brought this action May 24, 1901, for the purpose of ascertaining the reasonable value of the water-works with a view to the purchase thereof.

It was found that the present "physical value" of the water-works system was $59,996, including water rights, and that the "going value," by reason of the connections with private consumers and its being a live and going concern, was $26,710, and that the "reasonable value" of the system at the commencement of the suit and at the time of the finding, including its physical value and its going value, was $86,706; and it was found by the court below that upon the payment or tender of that sum on or before October 1, 1903, the appellee would be entitled to a conveyance and the possession and control of the water-works, and that a commissioner should be appointed to make the transfer; and it was so adjudged.

The controlling question of the cause, as presented by counsel, relates to the notice provided for by section eleven of the ordinance; it being contended, on behalf of the water company, that the contract provides that such notice shall be given after the end of fifteen years from the completion of the water-works, and that therefore the notice given by the appellee, somewhat more than a year before the expiration of the period of fifteen years, was of no avail. We are

unable to agree with the theory proposed by counsel that the language of the section in question is in the nature of a provision for a forfeiture. It is not contemplated in that section that the water company shall be devested of its property without compensation by reason of a default or an offense. On the contrary, the section in question contains a contractual provision for the reservation by the city granting the franchise of a right to purchase the property of the grantee of the franchise before its expiration by lapse of time, the manner of indicating the city's desire to purchase, and the method to be pursued by both parties for the ascertainment of the reasonable value to be paid, being agreed to by them as parts of the contract. If the water company parts with its property in pursuance of the provisions of this section, it will be but the performance of a promise of a contract upon a valuable and sufficient consideration.

Nor can we regard the contract as one to be construed as to this particular portion more strongly against the city than the water company, by reason of its being a contract prepared with care and at leisure by the former, and accepted by the latter without like opportunity to consider its provisions, as in case of a policy of insurance. The city granting the franchise reserved the right to terminate the enjoyment thereof by the grantee, and to acquire, for its reasonable value, the property used in such enjoyment, the manner of exercising this right on the part of the city being stipulated in the contract, whose language should be construed in the sense in which it may be supposed to have been understood by the parties at the time of the making of the contract, doubt as to their intention being resolved in favor of the city rather than of the water company.

The grant of the franchise by the municipal corporation is to be strictly construed and to be taken most strongly against the grantee, and nothing is to be taken by implication against the municipal corporation representing the

public, except, what necessarily arises from the nature of the terms employed. *Indianapolis Cable St. R. Co.* v. *Citizens St. R. Co.*, 127 Ind. 369, 8 L. R. A. 539. If there be any doubts arising upon the language of the contract between the city and its grantee of the franchise as to the rights of the latter under the contract, such doubts are to be resolved against the grantee and in favor of the city. *Western Pav., etc., Co.* v. *Citizens St. R. Co.*, 128 Ind. 525, 10 L. R. A. 770, 25 Am. St. 462; *Cambria Iron Co.* v. *Union Trust Co.*, 154 Ind. 291, 48 L. R. A. 41. Doubtful questions involved in the construction of such contracts made by agents of the public are to be resolved liberally in favor of the public. *Muncie Nat. Gas Co.* v. *City of Muncie,* 160 Ind. 97.

There are in the section in question a leading or predominating idea and a subordinate idea. The leading idea is the purpose to accomplish something, and the subordinate idea relates to the manner of accomplishing it. The prominent and controlling purpose is to provide a minimum period during which the water company could not be deprived of its enjoyment of the franchise, and at the end of which the city might terminate it and acquire the tangible property and water rights of the company at their reasonable value. That minimum period was fifteen years, not sixteen years. The language which embodies the leading idea is: "At any time after the expiration of fifteen years from the completion of said water-works, the city shall have the right to purchase the same." In providing the method of accomplishing such a result, it is stipulated that this right to purchase at any time after the expiration of fifteen years shall be exercised by the city by giving the owners of the property one year's notice in writing. Undoubtedly, there must be a compliance with the requirement such as will fulfill the expressed meaning of the parties.

In the second section of the ordinance it was provided that the privileges and franchises granted "shall continue

for a term of fifty years; * * * such rights, privileges, and franchises, however, are subject to the condition hereinafter provided." It was the apparent intention of the parties to contract for an enjoyment by the grantees, their successors and assigns, for fifty years, with the right on the part of the city to cut down that period to one ending "at any time after the expiration of fifteen years from the completion of said water-works."

If it be agreed that such strictness of performance shall be required as is requirable of a party seeking to purchase, who, being bound to perform a condition precedent, was not bound to purchase and could not be required to do so, while the other party was bound to sell, yet, in ascertaining what was to be performed, the meaning of the contract is to be determined from all the language used and the consideration of the nature of the transaction in which the language was employed, no greater advantage being given in the construction of the language to those dealing deliberately for their own private gain than to the municipal corporation represented in the making of the contract by its personally disinterested officials, but doubt, if any, being solved in favor of the city. The purchase and the giving of notice were distinct from each other. While the one year's notice was requisite, the right to purchase was to come into existence at any time after the expiration of the certain definitely ascertained period of fifteen years, and its existence *in præsenti* was to be preceded by the giving of one year's notice; and the contract must be regarded as equivalent to an agreement to sell at any time after the expiration of fifteen years, upon performance of the conditions precedent.

We are of the opinion that a notice in writing of intention to exercise the right of purchase at a time after the expiration of fifteen years, served upon the owner of the water-works one year before that time, would constitute the giving of one year's notice within the meaning of the

contract, and, therefore, that the notice given by the appellee was sufficient.

Judgment affirmed.

Wiley, P. J., Comstock, Robinson, and Roby, JJ., concur.
Henley, C. J., dissents.


## DISSENTING OPINION.

HENLEY, C. J.—I can not agree with the opinion of the majority of the court as to the construction to be given to the contract between the parties to this action. It is true that there can be no controversy concerning the law as stated in the prevailing opinion to the effect that where doubt exists as to the construction to be given a contract in which a municipal corporation is a party, that the doubt shall be resolved in favor of the city. But, in the case at bar, the construction of the contract for which I contend is the direct effect of giving the words employed therein their plain, ordinary meaning, thus eliminating any reason for resolving any part of the contract in favor of one party more than another. The right granted the city in the contract is the right to purchase after a certain period. It is a right limited as to time and plan, and must be pursued under the terms of the contract. The water company's rights do not, under the contract, end at the expiration of fifteen years. The right granted was for fifty years, and it is not provided that the city could purchase at the expiration of fifteen years, but it is provided that after the expiration of fifteen years, by doing certain things, the city might purchase the property. The failure of the city to give notice at any special time did not forfeit its rights which it could, under the procedure marked out by the contract, enforce any time during the thirty-five years following the expiration of the fifteen years. The water company's rights were not for fifteen years, but for fifty years. Its ownership and control were as absolute at the expiration of forty years as at the

expiration of one year, unless the city proceeded under the contract to purchase the property. The city was not required to proceed to purchase the property after fifteen years. It lost no right under the contract by refusing to do so. Its right to purchase was not forfeited, and such right extended over the whole period of thirty-five years. The contract between the parties to this action is not like a contract creating a tenancy which could be terminated by notice at the expiration of a certain time, or on or before a certain time. If likened to a tenancy, then the term of the lessee must have been for fifty years, and the right to terminate or the option to terminate must be after fifteen years of the tenancy has expired. I think it is the plain meaning of the contract between the parties to this action that the right to purchase did not accrue until after the expiration of fifteen years, and all the acts necessary to be performed by the city in order to acquire the ownership of the property must be performed after the fifteen-year period has expired. Any other construction would give to the city the right to do and perform the most essential part necessary to accomplish its purpose prior to the expiration of the fifteen-year period, within which time, under the plain construction of the contract, it had no right to proceed. It is also plain to me that the parties intended that the construction here contended for should obtain; and it is also plain that the best interests of both parties to the contract called for such a construction. The taxpayers of the city of Valparaiso had a right to know the exact time when their agents, the members of the city council, would have a right to purchase the water company's property under this contract.

Under the construction given to the contract in the prevailing opinion, any city council elected prior to the expiration of the fifteen-year period could give the notice provided for under this contract. It seems that the best interests of the citizens of the city of Valparaiso would be subserved by holding, as the plain meaning of the words, I think, war-

rant, that no city council elected prior to the expiration of the fifteen-year period would have the right to exercise any power or do anything towards the purchase of the water-works under this contract.

I think the judgment should be reversed.