EAU CLAIRE WATER COMPANY, Appellant, vs. CITY OF EAU CLAIRE and another, Respondents.

*May 22—June 20, 1907.*

*Municipal corporations: Waterworks: Power to acquire: Reserved right of purchase: Construction: Waiver: Exceeding debt limit.*

In granting a franchise to construct and operate a waterworks system, a city reserved the right to purchase the plant at the expiration of five years from its completion, and at intervals of five years thereafter, at a valuation to be fixed by appraisers chosen in a prescribed manner. The plant was completed December 15, 1885. In 1900 the city, after causing an appraisal to be made, declined to purchase. In 1902, differences having arisen between the city and the water company as to the adequacy of the service, the latter, under an agreement with the city, made extensive additions and improvements in its system. August 4, 1905, the city served notice on the water company that it desired to take steps for an appraisal of the system with a view to purchase. Appraisers were appointed by the city in the manner prescribed, and also by the water company under protest. The four appraisers thus chosen having held no meeting and having failed to select a fifth appraiser as prescribed, the city on September 16, 1905, gave notice to the company that it would on September 25th apply to the circuit court to appoint the fifth appraiser. In an action by the water company to restrain the city from continuing its proceedings to secure an appraisement, *held:*

(1) The city having power to establish and operate a water system, it could acquire an existing system constructed by private parties under authority from the city, and the reserved power of purchase was therefore valid.

(2) The right to purchase was not exhausted by the city's action in securing the appraisal in 1900.

(3) The city did not by the agreement relating to the improvement and extension of the waterworks in 1902 waive or alter the provision of the original ordinance respecting the right of purchase; and the option to purchase embraced the extensions, additions, and improvements made in 1902.

(4) The city could not be called upon to exercise its option to purchase until an appraisal had been made and filed, and therefore the steps taken by it beginning August 4, 1905, to se-

cure such an appraisal were within reasonable proximity to the expiration of the period on December 15, 1905.

(5) The objection that the city had no funds with which to make the purchase and that to procure the necessary funds it must exceed its debt limit cannot be raised in this action.

APPEAL from an order of the circuit court for Eau Claire county: CHESTER A. FOWLER, Judge. *Affirmed.*

This is an action in equity to restrain defendants from proceeding to enforce an alleged right to purchase plaintiff's waterworks plant under the provisions of an ordinance of the city of *Eau Claire* adopted February 18, 1885. The ordinance was one granting to Fairbanks, Morse & Co., their successors and assigns, the right "to construct, maintain, and operate waterworks to supply the city and citizens of *Eau Claire,* Wisconsin, with water, and defining their rights, privileges, and powers." The complaint alleges that plaintiff is now the owner of this franchise and the property constituting the waterworks system and plant of the city. Sec. 13 of the ordinance granting the right and authority to construct, maintain, and operate the waterworks is as follows:

"Sec. 13. This ordinance is passed upon the express condition and reservation that the city of *Eau Claire* reserves to itself the right to acquire of said grantees, their heirs and assigns, the said waterworks, and all lands, machinery, pipes, mains, hydrants, and appurtenances thereunto belonging: and the said grantees, their heirs and assigns, in accepting this ordinance, expressly covenant and agree that they will sell and convey to the said city of *Eau Claire* the said waterworks and all lands, machinery, pipes, mains, hydrants, and appurtenances thereunto belonging, or in any manner appertaining thereto, at the expiration of five years from the completion of said works and at intervals of five years thereafter, at an appraised value for said works to be determined as follows:

"Whenever the city shall determine or desire to purchase said works, the mayor thereof shall give written notice to said grantees, their heirs and assigns, to appoint and select two persons to act as arbitrators in fixing and appraising the

value of such waterworks, without taking into consideration the property and rights leased or hereinbefore granted by the said city to the said grantees, their heirs and assigns, by this ordinance, or any hydrants and connections which may have been located on said main pipes at the expense of the city; which said notice may be served upon any one of said grantees, their heirs and assigns, or upon the chief officer in charge of the said waterworks at *Eau Claire.*

"Within thirty days after the service of said notice, the said grantees, their heirs and assigns, and the said city, shall each select two persons as appraisers, but in case of the failure of said city to appoint such two arbitrators, such arbitration shall be thereby ended; and the four thus chosen shall, within ten days thereafter, select a fifth, which five persons thus selected shall, within thirty days thereafter, determine the value of such waterworks, without taking into consideration the property and rights leased or hereinbefore granted by the said city to the said grantees, their heirs and assigns, by this ordinance. And in case said grantees, their heirs and assigns, shall fail or neglect to select such two arbitrators within the time hereinbefore required, or in case the four arbitrators should neglect or refuse to choose a fifth arbitrator within the time hereinbefore required, then, in either or both cases, as may be, the two arbitrators or the fifth arbitrator may be appointed by the judge of the circuit court of the judicial district in which said city shall be situated, on the application by the mayor of said city, on ten days' notice in writing to said grantees, their heirs and assigns, or to the chief officer in charge of said waterworks at *Eau Claire.* The persons selected as arbitrators shall not be residents of the city of *Eau Claire* or persons in the employ or interest of the said city or of the said grantees, their heirs and assigns.

"Said five persons or their majority, at a meeting of which all said arbitrators shall have had a personal notice, may and shall, as arbitrators, on examination and evidence, fix and determine the actual value of said waterworks, exclusive of the property and rights leased or hereinbefore granted by the said city to the said grantees, their heirs and assigns, by the second section of this ordinance, and without reference to the franchise therewith connected, but including

all improvements, buildings, betterments, machinery, or other appliances placed by the said grantees, their heirs and assigns, upon or connected with the property so leased or granted to them by the said city, and constituting a part of the said waterworks, excepting the hydrants which may have been located on the said main pipes at the expense of the said city at the time such appraisal is made, such appraisal not to exceed what it would cost to build and construct such works at that time. And said appraisers shall make their award in writing, in duplicate, and shall deliver one duplicate to the said grantees, their heirs and assigns, or to the chief officer in charge of the said waterworks at *Eau Claire,* and shall file the other with the city clerk of the said city within ten days after the same is made.

"And the said city shall thereupon have the right then and there to exercise the option to take the said waterworks, and all property, rights, and appurtenances connected therewith, or in any manner appertaining thereto, at the price so fixed; which purchase money shall be payable to the grantees, their heirs and assigns, within six months from the time the said city shall so elect to purchase.

"But in case the city elect to purchase, each party shall pay their own expenses so incurred, and the expense of the fifth arbitrator shall be paid equally by the said city and the said grantees.

"And in case the said city of *Eau Claire* shall, after such award, fail or refuse to purchase, it shall pay the expenses of the arbitrators."

Under this grant waterworks were constructed and completed and accepted by the city December 15, 1885. The plaintiff and its predecessors have since this acceptance and completion of the waterworks plant operated it and furnished water to the city and its inhabitants. In the year 1900 the city, under sec. 13 of this ordinance, instituted proceedings for an appraisal of the property of the plaintiff with a view to exercising the right of purchase, as provided in the provisions of this ordinance. An appraisal was duly made in the manner agreed upon in the ordinance by five arbitrators selected by the city and the company then owning the water-

works and franchise. On July 20, 1900, they reported an appraisal in writing, a copy of which was filed with the city clerk as required; but the city refused to exercise the right to purchase the property so appraised, and the waterworks company continued in the ownership, control, and operation of the plant.

After this proceeding and prior to February 11, 1902, differences under the requirements of the ordinance had arisen between the city and the owners of the waterworks respecting the sufficiency of the plant and the service rendered for furnishing water to the city and citizens. An action had also been commenced in the federal court by the holders of the waterworks company's bonds, wherein a receiver had been appointed and had taken possession of the waterworks for the court. Under these circumstances it was agreed between the city and the company operating the plant, in order to adjust these differences and to remove the difficulties involved in the controversy, that the water service should be improved by increasing the water supply and by adding new works to furnish the amount of water required daily, without taking any water from the Chippewa river or Half Moon Lake, and that the reservoir from which water had formerly been taken should only be used in case of emergency. It was also agreed that the company should improve the waterworks system at its cost and expense by laying and connecting with the existing plant, in specified streets of the city, a large amount of new water pipe, and that no hydrant should be placed on the new extensions unless directed by the city; but, if so directed, the charge should be $50 per hydrant per annum. The company was also to so improve its pumping station and power plant as to enable it to carry out the contemplated enlargement and improvement. All of the changes and improvements were to be completed by November 1, 1902. It is alleged that the improvements were made as agreed, that the receiver of the court assented thereto and

co-operated with the owners of the waterworks in completing them, that the cost of these improvements and extensions amounted to about $60,000; and that they were completed about November 1, 1902.

It is further alleged that on August 4, 1905, the city caused a notice to be served on the plaintiff of the city's desire to take the steps necessary for an appraisal of plaintiff's waterworks for the purpose of acquiring it by purchase under the provisions of the ordinance, and, pursuant to the ordinance, demanded that plaintiff select two arbitrators to fix the value of this property. Thereafter the common council of the city of *Eau Claire* selected William Bowe and L. P. Wolff as arbitrators. Plaintiff, on September 2, 1905, selected John W. Alvord of Chicago and Charles B. Salmon of Beloit, Wisconsin, as arbitrators. Plaintiff at this time, by notice served on the city, protested, and claimed that the city had no right to purchase the waterworks or to acquire it as proposed pursuant to the notice given plaintiff, declared such notice to be insufficient and ineffectual, and named such arbitrators only tentatively, without waiving any of its rights in the matter. The four arbitrators thus designated have had no meeting and have made no selection of the fifth arbitrator provided for by the ordinance. On September 16, 1905, the mayor of the defendant city gave notice to the plaintiff that he would on September 26, 1905, apply to Hon. JAMES O'NEILL, the judge of the judicial district wherein the city of *Eau Claire* is situate, for the appointment of the fifth arbitrator. Plaintiff alleges that this notice and the proceeding attempted to be taken pursuant thereto "is not taken in good faith, and in that behalf alleges that said city, by said proceeding, in no way binds itself to make such purchase when an appraisal shall be had. That said city has no funds at command with which to pay for said waterworks within the time prescribed by said sec. 13, after an appraisal shall have been made." The complaint also charges that the

city has no power to incur an indebtedness above the sum of $150,000 in addition to its present subsisting indebtedness at the present assessed valuation of the property within the city, and that such sum is wholly inadequate to pay the present value of the waterworks property so sought to be acquired.

Upon the facts plaintiff demands that defendants be restrained from enforcing the arbitration to acquire the waterworks property under the ordinance. The defendants demurred to the complaint, alleging that it did not state facts sufficient to constitute a cause of action. The court by order sustained the demurrer. This is an appeal from such order.

For the appellant there was a brief signed by *W. F. Bailey,* attorney, and *Winkler, Flanders, Smith, Bottum & Fawsett,* of counsel; also a brief signed by *F. C. Winkler,* counsel, and *W. F. Bailey,* attorney; and oral argument by *Mr. Bailey* and *Mr. Winkler.*

*A. C. Larson,* city attorney, and *James Wickham,* of counsel, for the respondents.

SIEBECKER, J. The contention is that the complaint states good grounds for the equitable relief asked, because the defendants seek to fasten a claim upon plaintiff's waterworks system, to which they are not entitled in law under the facts and circumstances alleged, and that, unless defendants be restrained, their conduct in this respect will injuriously and vexatiously affect plaintiff's property rights and thus subject it to irreparable losses. Plaintiff therefore asks that it be protected by order of the court preventing defendants from taking any further steps in the matter, and that the court declare the claim of a right to purchase to be without foundation in law. This demand of the plaintiff is made upon the several grounds alleged in the complaint, which are: (1) That the city had no power to contract for the purchase of the waterworks, and hence the provisions of the ordinance respecting it are ineffectual and void; (2) that, if it had any such

power at the time the ordinance was adopted, it has exhausted its right to effect a purchase thereunder by the proceeding of 1900; (3) that, if it had any such right, it has by the agreement of February 11, 1902, either waived it in its entirety, or, if it was not so waived, then the right to enforce it was postponed for a period of five years from such date, and therefore the present steps are premature and without authority; (4) that if the right to purchase subsists as defendants claim, the time for its enforcement was in December, 1905, and any steps for the appointment of appraisers taken before this date are ineffectual and invalid; and (5) that the city, in any event, is powerless to effect such a purchase under the circumstances alleged, since the exercise of such a right calls for the creation of a debt in excess of the constitutional limitation.  An examination of these contentions will test the sufficiency of the complaint.

The power of a city to establish, maintain, and operate a system of waterworks was clearly recognized in *Ellinwood v. Reedsburg,* 91 Wis. 131, 64 N. W. 885, as within the exercise of the powers granted it to accomplish the usual functions pertaining to police regulations, the preservation of the public health, and the general welfare.  We cannot discover that acquiring an existing waterworks system, constructed by private parties under authority from the city, is an impediment to the exercise of this power.  In its nature this is an exercise of such power for proper municipal purposes and differs from the usual method only in the manner of accomplishing it.  Such method of acquiring control of waterworks plants has been upheld as proper in other jurisdictions. *Fayetteville v. Fayetteville W., L. & P. Co.* 135 Fed. 400; *Bristol v. Bristol & W. W. W.* 19 R. I. 413, 34 Atl. 359; 2 Abbott, Mun. Corp. §§ 456, 457.

It is said that if the contract for the purchase, contained in the ordinance authorizing the construction of plaintiff's waterworks system, was legal in its inception, then the city

has exhausted such right under it by its proceeding to effect such purchase in the year 1900. It is undisputed that the city took steps to have, and that it secured, an appraisal of plaintiff's property at that time for the purpose of enforcing a purchase under the ordinance, and that after such appraisal it determined not to purchase the property at the valuation fixed by the arbitrators. The ordinance reserves to the city the right to acquire such waterworks system by purchase and to secure a conveyance "at the expiration of five years from the completion of said works and at intervals of five years thereafter." The meaning of this clause is free from obscurity and uncertainty, and is plainly to the effect that the city should have a right to secure the waterworks by purchase at the expiration of five years after its original completion, and that if it did not then purchase it might do so at the expiration of any interval of five years thereafter. There is nothing in the agreement from which it can be inferred that the city should be deemed to have exhausted its right to purchase whenever it had secured one appraisal of the works for that purpose. Since the city did not purchase in 1900 it still has this right, unless it waived it by the agreement of February 11, 1902, or otherwise lost it.

The allegations of the complaint show that the agreement of February 11, 1902, embraced an adjustment of differences between the city and the waterworks company respecting complaints of insufficiency of the service furnished the city and its inhabitants, but nothing appears, either expressly or by implication, indicating that the agreement in the ordinance respecting the city's right to purchase the property was modified. Everything undertaken pursuant to that agreement was for the purpose of bringing the waterworks system up to the required state of efficiency evidently contemplated in the original undertaking for its construction, and the extension and additions of such improvements of the plant were treated as carrying out the original plan for providing a water

service to the city. We find no basis for the claim that the city by this agreement waived and altered the provision of the ordinance respecting the city's right to purchase at any interval of five years from the time of its completion in 1885. This part of the contract remains as it was when first made, and embraces whatever extensions, additions, and improvements plaintiff or its predecessor in ownership of the plant may have made under the agreement of February 11, 1902.

Another claim is that defendant cannot enforce any right to purchase under the notice served by its mayor on August 4, 1905, because no steps can be taken to effect this purpose until the city decides to make the purchase, and that such determination must be made on December 15th, the date of the expiration of the five-year intervals. This is asserted upon the condition in the contract that:

"Whenever the city shall determine or desire to purchase said works, the mayor thereof shall give written notice to said grantees, their heirs and assigns, to appoint and select two persons to act as arbitrators in fixing and appraising the value of such waterworks."

The city is also to select two persons as arbitrators, and the four persons so selected are to choose a fifth. If these terms of the agreement were to be considered independently of all the other facts, it might furnish a basis for such a construction; but they must be read and interpreted with the other parts of this agreement, wherein it is specified that after the appraisal of the plant has been made and reduced to writing by the persons so chosen by the parties, and after they have delivered a duplicate thereof to the plaintiff and filed another with the city clerk within ten days after the appraisal so made, the city "shall thereupon have the right then and there to exercise the option to take the said waterworks, and all property, rights, and appurtenances connected therewith, or in any manner appertaining thereto, at the price so fixed." The terms of this provision express clearly that the city is

not required to decide whether or not it will exercise the right to purchase until the appraisal has been made and filed. In the light of these provisions and the conditions specifying how the arbitrators were to be selected and appointed and how the appraisal was to be made, it is obvious that the steps for an appraisal of the property were to be taken before the city was called upon to decide whether or not to purchase, and in order that the city might act understandingly in the matter of exercising its option within reasonable proximity to the expiration of the period when the purchase was to be made under the agreement. The nature of the transaction involved suggests that this was the natural and obvious intention of the parties in making this stipulation. Of course, each party must act within a time reasonably near the expiration of the period fixed by the agreement. The city was therefore called upon to have all the steps preliminary to the exercise of its option taken at a time reasonably near December 15th. In view of the steps required to secure an appraisal and the time needed by the arbitrators to file their appraisal, we are of the opinion that the city did not act prematurely in giving notice on August 4, 1905, for the selection of arbitrators to appraise the property. The time necessarily required to complete the appraisal brings the time of notice reasonably near the time when the city had the right "to exercise the option to take the said waterworks . . . at the price so fixed." *Valparaiso City W. Co. v. Valparaiso,* 33 Ind. App. 193, 69 N. E. 1018.

It is also contended that the city is powerless to effect such a purchase, under the facts and circumstances alleged, upon the ground that its consummation calls for the creation of a city debt in excess of the constitutional limitation. In view of the assessed valuation of the taxable property of the city, and in view of the fact that the city now has an indebtedness nearly reaching the constitutional limitation, and that an addition to the present city indebtedness of the amount of

money necessarily required to purchase this waterworks plant
would of necessity create an indebtedness which in the ag-
gregate would exceed five per centum of the value of the tax-
able property in the city as ascertained by assessments made
for state and county taxes, it is asserted that the city cannot
effect such a purchase.  It is urged that the city now has no
funds to apply to such use, and is unable to provide any by
the means within its power, and that the obligation which it
must incur in making the contemplated purchase will of
necessity increase the city's indebtedness above the constitu-
tional limitation.  We are unable to perceive any merit in
these contentions.  The fundamental facts involved in these
claims are the purchase price of the property, the nature of
the obligations the city will be required to assume to raise
the necessary means to make the purchase, and the financial
condition of its treasury at the time of the purchase.  All of
these are as yet not ascertained.  Under these circumstances
the question of the city's ability to consummate the contem-
plated purchase is one that cannot now be ascertained nor de-
termined, and its merits cannot arise under the facts alleged
in the complaint.

Upon these considerations it must be held that the com-
plaint states no facts showing that the right of the city to
purchase, under the provisions of the ordinance, has been
abrogated or lost; that the city is properly within its rights
in seeking to have arbitrators appointed to appraise the
plaintiff's waterworks plant for the purpose of enforcing the
right reserved to it of securing it by purchase and conveyance;
and that the trial court properly held that the complaint
stated no grounds entitling plaintiff to relief restraining de-
fendants from proceeding in this matter.

*By the Court.*—Order affirmed.