WARREN SPRINGER

*v.*

JOHN BORDEN.

*Filed at Ottawa January 15, 1895.*

EQUITY—*when equity will fix value of property as basis of rent.* A court of equity will determine the value of property as the basis for fixing rents, under a lease providing for periodical re-valuations, if an appraisement cannot be secured as contemplated in the lease, and the lease itself provides that in such case either party may resort to the courts.

*Springer* v. *Borden*, 54 Ill. App. 557, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

This was a bill in equity, brought by John Borden, who is owner in fee simple of lot 3, in block 117, in school section addition to Chicago, in Cook county, against James Donavan, George A. Taylor, and others, for the purpose of having the court ascertain and fix the cash value of the lot on the first day of January, 1892, exclusive of the buildings and improvements thereon, in the manner and for the purposes specified in a lease executed on the fifth day of August, 1881, by the complainant and George A. Taylor, whereby the complainant demised and leased the lot to Taylor for a term commencing on the first day of September, 1881, and ending on the first day of January, 1922. It was provided in the lease that said lessee should pay as rent for said demised premises during the first ten years and four months of said term thereby granted, the yearly rent or sum of $10,000, by equal quarterly payments on the last day of each of the months of March, June, September and December which should be in each year, during and until the first day of January, 1892, but no rent was to be paid for the first

four months of said demised term ending on the first day of January, 1882, so that the first quarterly payment of rent under said lease was payable on the 31st day of March, A. D. 1882; and it was further provided in said lease, that during the residue of the term, from the first day of January, 1892, to the first day of January, 1922, the lessee should pay therefor, yearly, the sum or yearly rent which should be equal to five per cent of the cash value of the premises, excluding buildings and improvements, in case five per cent should exceed $10,000, but if not, then the lessee should pay $10,000 per annum. The lease contained the following covenant in regard to ascertaining and fixing the amount of rent from the first of January, 1892, to the first of January, 1922 :

"And it is mutually agreed between the parties hereto, that in order to fix the rent above reserved and agreed to be paid for the residue of said term, beginning with the first day of January, 1892, to the end thereof, the cash value of said demised premises, as hereinbefore specified, on the first day of January, 1892, shall be taken and considered as the said cash value thereof for the ten years next ensuing thereafter, inclusive of said day. And so in like manner the said cash value of said demised premises, as hereinbefore specified, on the first day of the month of January which shall be in every tenth year thereafter during the continuance of said term, shall be taken and considered as the said cash value thereof for the ten years next ensuing thereafter, and inclusive of every such first day of January, so that the cash value of said demised premises, as before specified, on the first day of January, 1892, and on the first day of the month of January which shall be in every tenth year thereafter, shall be the basis whereby the yearly rent to be paid for said demised premises shall be fixed, in amount, for the period of every ten years next ensuing, and inclusive of every such first day of January. And it is further mutually agreed between the parties hereto, that in order

to ascertain the said cash value of said demised premises, as before specified, at each of the above dates, the person or persons then interested on either part hereto may, not exceeding ninety days prior to each of such dates, select a competent and disinterested person, who shall be, at the time, a resident of the said city of Chicago and the owner of a freehold in the south division thereof, and notify the person or persons then interested on the other part hereto of such selection, whereupon he or they shall, within fifteen days thereafter, select another person of like character and qualifications, and notify the person or persons making the first selection of such second choice, whereupon the two persons thus chosen shall select a third person of like character and qualifications as above, or if the two cannot agree upon such third person, each of them shall name one person, of which two the one to serve shall be determined by lot in any manner mutually agreed upon by the two persons already chosen, and the three so selected, having been first duly sworn, shall fix a time and place of meeting, and notify the persons interested, at which, as well as at all adjourned meetings, the persons interested shall be entitled to be heard with their proofs, after which the said appraisers, or a majority of them, shall render their award in writing, subscribed by them, or a majority of them, of the then cash value of said demised premises exclusive of the buildings and improvements thereon, which award shall be made in duplicate, with a copy of the oath or oaths of the appraisers thereto attached, and be delivered to the person or persons then interested on the side of the first and second parts hereto, one copy to and for each party, which value, when so found in a legal, just and valid manner, shall be assumed and taken to be the said cash value of said demised premises, as above specified, at the respective date for which said appraisers may have been chosen and selected. And it is further mutually agreed between the parties hereto, that if, for

any cause whatever, a valid and just award shall fail to be made at any of the said times, or shall not be made and completed by the time or date for which, if duly made, it would fix or ascertain the said cash value of said demised premises, as aforesaid, then, unless all the parties interested can otherwise at once agree upon such value, any person or persons at the time interested upon either part or side hereto shall have the right and be entitled to apply to any court of record in said county of Cook to have the said value ascertained, whose judgment or decree in the premises shall be binding upon all persons concerned."

It appears, from the evidence, that a short time before the first day of January, 1892, the lessor, John Borden, took steps to have the property appraised, as provided for in the lease.   The first movement in that direction was December 10, 1891, when the lessor appointed Cornelius Price appraiser under the lease, and served notice of the appointment on the lessee.   On December 21 John Morris was selected appraiser on behalf of the lessee. On January 12, 1892, T. B. Leiter was agreed upon by the two appraisers as a third appraiser.   On January 13 Leiter declined to serve.   On the next day, however, he wrote a letter, in which he stated that he would serve if satisfactory to Price.   On the 15th Price declared that it would not be satisfactory.   Leiter therefore declined to act.   Morris refused to make a selection of another appraiser in the place of Leiter, and then the complainant filed this bill.   Answers were put in and a hearing was had on the pleadings and evidence, and the court rendered a decree in favor of complainant, as prayed for in the bill.

Peck, Miller & Starr, and William J. Ammen, for appellant :

The lease cannot be regarded as conferring any jurisdiction upon a court of equity, unless the subject matter

is such as is within one of the recognized heads of equity jurisdiction. *Harris* v. *People*, 128 Ill. 585.

Want of jurisdiction over the subject matter of the controversy itself is an incurable defect. *Vogel* v. *People*, 37 Ill. App. 388; *Peak* v. *People*, 71 Ill. 278; *Fleischman* v. *Walker*, 91 id. 318.

The cash value of the premises on January 1, 1892, can be as well determined in an action at law for the rent, and by a jury, as it could by the honorable chancellor. *Stose* v. *Heissler*, 120 Ill. 433.

WILSON, MOORE & McILVAINE, for appellee:

If the remedy which the party may have at law will not put him in a situation as beneficial to him as if the agreements were specifically performed, relief will be afforded in equity. *Furniture Co.* v. *Rowe*, 18 Ill. App. 293; *Kelso* v. *Kelly*, 1 Daly, 419; *Lowe* v. *Brown*, 22 Ohio St. 463; *Durham* v. *Bradford*, L. R. 5 Ch. App. 518; *Strohmaier* v. *Zeppenfeld*, 3 Mo. App. 429; *Viany* v. *Ferran*, 54 Barb. 529; *Coles* v. *Peck*, 96 Ind. 333; *Gregory* v. *Mighell*, 18 Ves. 328; *Gourlay* v. *Somerset*, 19 id. 429; Wood on Landlord and Tenant, 673-674.

CRAIG, J.: It is first claimed by counsel for appellant that a court of equity had no jurisdiction of the subject matter—that there was a complete remedy to recover the rent by an action at law on the covenents of the lease. It will be observed that the rent was payable quarterly, and the lessor was entitled to a prompt payment, with a provision for forfeiture in case the lessee failed to comply. How could the lessee know how much rent he was required to pay each quarter, for the period of ten years, unless an appraisement of the property should be first made, and how could the lessor know how much rent to demand each quarter unless the value of the property had been determined, as provided in the lease? It may be true that the lessor might bring an action at law each

quarter during the ten years, and prove the value of the property, and then recover five per cent of the valuation. But the lessor had the right to know the amount of rent due each quarter during the ten years, in order that he could demand prompt payment, and insist on a forfeiture if he desired, or in order that he might distrain for rent, if he thought proper.   So, also, the lessee was entitled to have the amount determined so that he could comply with the terms of the lease.   The remedy at law would require the lessor to bring an action every three months during the ten years, and litigate with the lessee the value of the premises, before it could be known what amount of rent the lessor was entitled to recover.   A remedy of that character is far from adequate.   Moreover, under the statute the lessor was entitled to distrain for rent, but in order to do so he was required to specify the amount due.   But that he could not do until he had settled the amount by action at law.

The same question involved here arose in *Tobey Furniture Co.* v. *Rowe*, 18 Ill. App. 293, and it was there held, that while a court of equity will not specifically enforce a contract for arbitration by compelling the appointment of arbitrators or by compelling them to act when appointed, yet where the rights of the parties are made to depend upon an appraisal of property, and the appraisal provided for in the contract has failed, courts, both of equity and of law, will interfere to prevent a failure of justice by hearing the evidence and making the appraisement.   The contract in that case and the one here involved are so similar that any rule applicable to one must control the other.

In *Kelso* v. *Kelly*, 1 Daly, (N. Y.) 419, where a lease provided for a second term of five years, the rent to be fixed by arbitrators to be chosen, an award was made but failed, whereupon a bill was filed to have the court fix and determine the rent.   In disposing of the case it is said:   "If the rent is to be fixed, not by the parties, but

by arbitration, the court can, by taking proof, ascertain and fix it with as much certainty as the arbitrators could do; and if the mode of determining it by arbitration cannot be resorted to, through the refusal of one of the parties to appoint an arbitrator, there is no reason why the other party should lose the benefit of a contract in all other respects valid and binding, when the court has the means of fixing what so eminent a judge as Sir William Grant regarded as a mere matter of detail.   *   *   ·   *    But the plaintiffs cannot give a new lease until the amount of the rent is fixed. As the defendant will not appoint an arbitrator, the plaintiffs are entitled to the equitable aid of the court to ascertain it, that being the only mode, under the circumstances, in which it can be ascertained and fixed. The relief sought is purely of an equitable nature, to which the plaintiffs are entitled if they have no adequate legal remedy.   *   *   *    If the remedy which the party may have at law will not put him in a situation as beneficial to him as if the agreement were specifically performed, relief will be afforded in equity." In *Viany* v. *Ferran*, 54 Barb. 529, a similar question arose and the same doctrine was announced. See, also, *Coles* v. *Peck*, 96 Ind. 333; *Lowe* v. *Brown*, 22 Ohio St. 463; *Durham* v. *Bradford*, L. R. 5 Ch. App. 518.

In *Strohmaier* v. *Zeppenfeld*, 3 Mo. App. 429, a lease contained covenants of renewal upon a valuation of the premises, to be determined by two freeholders. The appraisement failed, and the lessee filed a bill for relief. In the decision of the case the court said : "As has been shown, a court of equity does not enforce the contract as made by the parties in such cases as at present. On the contrary, equity proceeds upon the basis that the contract as made cannot be enforced, and applies its own remedies to the violation of its rules. The relief given is of a purely equitable nature, and the ground upon which the plaintiff is entitled to it is, that while he has a

clear right of action he has no adequate remedy at law. In the case of a covenant like that now in question it is obvious that it is not of the essence of the contract that the valuation should be made by disinterested freeholders, rather than by a court of equity. That is an immaterial detail, and a mode as effective and fair may be found. Accordingly, the court should hear evidence, and upon the case as made, and upon the facts as ascertained from the evidence, specific performance may be decreed."

As has been seen, the contract of the lessee required the cash value of the premises to be determined at a specified time, and he agreed to pay rent upon the cash value so ascertained. There was a failure to observe that part of the contract, and the value of the premises was not determined. The bill is in the nature of a bill for specific performance, and while it does not ask to have appraisers appointed and to have them proceed and determine the value of the property, the court is asked to hear the evidence, and from that evidence do what the contract required the appraisers to do,—fix the value of the property, so that a basis may be laid for ascertaining the amount of rent the lessor is entitled to recover. The bill, therefore, being practically one for specific performance, a court of equity had jurisdiction.

It is also claimed that the lessor wrongfully prevented an appraisement of the property as is provided for by the lease. It would serve no useful purpose to go over the evidence of the respective parties on this question. We have given the evidence a careful consideration, and we are satisfied that the lessor did not prevent an appraisement of the property by any wrongful act or conduct on his part. The lease provided that if, for any cause whatever, a valid and just award shall fail to be made, any person interested shall have the right to apply to any court of record in Cook county to have the value ascertained, whose judgment or decree shall be binding. The

lessor and lessee each selected an arbitrator, but as yet no third party has been selected who will serve. It was therefore the right of either party to apply to a court of equity for relief at the time the bill was filed, within the meaning of that clause of the lease allowing an application to a court of record.

It is also claimed that the value of the property as fixed by the court—$300,000—was too high. As a general rule, when witnesses are called upon to prove the value of a certain piece of property they will disagree. Such was the case here, but after an examination of all the evidence we are not prepared to say that the court reached a wrong conclusion.

The action of the court in the admission and exclusion of evidence is criticised, but, so far as we have observed, the court did not exclude any evidence which had a material bearing on the merits of the case, and if any evidence was admitted which was improper, the court, no doubt, on the final consideration of the case, rejected the same, and in a chancery case that is all that could be required.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*