LIVINGSTON WATERWORKS, APPELLANT, *v.* CITY OF LIVINGSTON ET AL., RESPONDENTS.

(No. 3,811.)

(Submitted May 20, 1916. Decided November 10, 1916.)

[162 Pac. 381.]

*Specific Performance — Cities and Towns — Municipal Waterworks Contract—Renewal Agreement—Estoppel.*

Contracts—Agreement to Enter into—Not Enforceable.

1. An agreement to enter into an agreement upon terms to be afterward settled between the parties cannot, as a general rule, be enforced.

[As to reference by contracting parties to future contract in working as negativing existence of present contract, see note in Ann. Cas. 1912B, 130.]

Same—Terms—Rates and Prices—When not Specifically Enforceable.

2. Where a contract leaves the matter of rates or prices uncertain, it cannot be specifically enforced unless they can be made certain by means provided in the contract itself.

---

. On validity and effect of stipulation in contract to renew on terms to be agreed upon, see note in 32 L. R. A. (n. s.) 201.

Same—Specific Performance—Municipal Waterworks Contract—Renewal Agreement.

3. *Held,* under the above rules, that a contract between a city and a water company under the terms of which the city bound itself to either purchase the company's plant at the end of twenty years, or renew the contract for twenty years longer "upon such terms as are mutually agreed upon at that time," was not specifically enforceable, inasmuch as courts cannot compel parties to agree or make an agreement for them.

Same.

4. Since the contract *supra,* sought to be specifically enforced was the contract originally in contemplation of the parties, at which time the Public Service Commission, with power to fix water rates, had not been created, the contention that, in view of such power, the clause calling for a renewal of the contract amounts to an agreement to renew at such rates as the commission may prescribe, and is therefore enforceable under paragraph 2, *supra, held* without merit.

Same—Specific Performance—Renewal Agreement—Estoppel.

5. Where the renewal of a twenty year water contract between a city and a water company became the subject of controversy immediately after its expiration, the company was not in position to assert estoppel because misled into making costly expenditures on the plant by the conduct of the city.

*Appeal from District Court, Park County, in the Sixth Judicial District; G. W. Pierson, Judge of the Thirteenth District, presiding.*

ACTION by the Livingston Waterworks against the City of Livingston and others. From a judgment for defendants and an order denying a new trial, plaintiff appeals. Affirmed.

*Messrs. Gunn, Rasch & Hall, Mr. Jas. Murray, Jr., Mr. O. M. Harvey* and *Mr. Fred. L. Gibson,* for Appellant, submitted a brief, and one in reply to that of Respondents; *Mr. M. S. Gunn* argued the cause orally.

The power to enter into a contract for a supply of water for a city and its inhabitants includes the power to grant a franchise, to lay and maintain pipes in the streets and operate the plant. (*Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249; *State* v. *City of Great Falls,* 19 Mont. 518, 49 Pac. 15; *Andrews* v. *National Foundry & Pipe Works,* 61 Fed. 782, 10 C. C. A. 60; *Pike's Peak Power Co.* v. *Colorado Springs,* 105 Fed. 1, 44 C. C. A. 333.)

The option granted by section 6 of the ordinance could not be exercised until after the expiration of twenty years from the date of the completion of the plant. After twenty years it became a continuing option. The city was required to either exercise the option to purchase at the expiration of twenty years or renew the contract. The renewal of the contract would not preclude the city from exercising the option to purchase, but the effect of renewing would be to continue the contract until the option is exercised, or until the expiration of the second twenty year period. (*Salina Waterworks Co.* v. *Salina,* 195 Fed. 142.) The city was estopped from questioning the reasonableness of the term. (3 Dillon on Municipal Corporations, 5th ed., p. 2151; *California Reduction Co.* v. *Sanitary Reduction Works,* 126 Fed. 29, 61 C. C. A. 91; s. c., 199 U. S. 306, 50 L. Ed. 204, 26 Sup. Ct. Rep. 100; *Atlantic City Water-Works Co.* v. *Atlantic City,* 48 N. J. L. 378, 6 Atl. 24.) In the case of *Slade* v. *City of Lexington,* 141 Ky. 214, 32 L. R. A. (n. s.) 201, 132 S. W. 404, a contract to purchase at the expiration of twenty-five years, or renew for an additional term of twenty-five years, was held valid. (See, also, *Salina Waterworks Co.* v. *Salina, supra; National Waterworks Co.* v. *Kansas City,* 62 Fed. 853, 27 L. R. A. 827, 10 C. C. A. 653; *City of Austin* v. *Bartholomew,* 107 Fed. 349, 46 C. C. A. 327.)

The contract to renew upon terms to be agreed upon was valid and enforceable. (*Slade* v. *City of Lexington,* 141 Ky. 214, 32 L. R. A. (n. s.) 201, 132 S. W. 405; *Castle Creek Water Co.* v. *City of Aspen,* 146 Fed. 8, 8 Ann. Cas. 660, 76 C. C. A. 516; *City of Fayetteville* v. *Fayetteville Water Co.,* 135 Fed. 400; *Bristol* v. *Bristol & Warren Waterworks Co.,* 19 R. I. 413, 32 L. R. A. 740, 34 Atl. 359; *Joy* v. *City of St. Louis etc. Ry. Co.,* 138 U. S. 1, 34 L. Ed. 843, 11 Sup. Ct. Rep. 243; *St. Paul, M. & M. Ry. Co.* v. *Western Union Tel. Co.,* 118 Fed. 497, 55 C. C. A. 263; *Union Pac. R. R. Co.* v. *Chicago Ry. Co.,* 163 U. S. 564, 41 L. Ed. 265, 16 Sup. Ct. Rep. 1173; *Kaufmann* v. *Liggett,* 209 Pa. 87, 103 Am. St. Rep. 988, 67 L. R. A. 353, 58 Atl. 129; *Arnot* v. *Alexander,* 44 Mo. 25, 100 Am. Dec. 252;

*Tscheider* v. *Biddle,* 5 Dill. 58, Fed. Cas. No. 14,210; *Coles* v. *Peck,* 96 Ind. 333, 49 Am. Rep. 161; *Gunton* v. *Carroll,* 101 U. S. 426, 25 L. Ed. 985; *Springer* v. *Borden,* 154 Ill. 668, (39 N. E. 603; *Central Trust Co.* v. *Wabash etc. Ry. Co.,* 29 Fed. 547.)

The law of Montana (Laws 1913, Chap. 52) has now conferred upon a commission the power and authority to prescribe the rates to be charged and to regulate and control the service by water companies. Any rates agreed upon, or prescribed by the court, are subject to revision by the Public Service Commission. If the contract had provided that in the event the city should not purchase, the contract as made should continue for another period of twenty years, the rates and prices agreed upon would be subject to control and regulation by the Public Service Commission. Such a contract is subject to the police power of the state. (*Walla Walla Case,* 172 U. S. 1, 43 L. Ed. 341, 19 Sup. Ct. Rep. 77; *Manigault* v. *Springs,* 199 U. S. 473, 50 L. Ed. 274, 26 Sup. Ct. Rep. 127; *Yeatman* v. *Towers,* 126 Md. 513, 95 Atl. 158.)

Alleged failure of water company to join with city in the appointment of appraisers or commissioners to determine value of waterworks: Until the city elected to purchase, there was no obligation on the part of the water company to name a price, or join with the city in having the price fixed in the manner provided. (*Montgomery Gas Light Co.* v. *City Council,* 87 Ala. 245, 4 L. R. A. 616, 6 South. 113; *Galena Water Co.* v. *City of Galena,* 74 Kan. 644, 87 Pac. 736; *Cherryvale Water Co.* v. *City of Cherryvale,* 65 Kan. 219, 69 Pac. 176.) If the price had been ascertained, any election by the city to purchase would have been nugatory. As a matter of fact, the constitutional provision limiting the indebtedness of cities, and the law enacted to make the same effective, have deprived the city of its right to exercise the option to purchase without the consent of the taxpayers. Until the taxpayers consent, the option to purchase cannot be exercised. It is within the power of the law-making body of the state to absolutely prohibit, or attach conditions to the exercise of the option by the city to purchase. (*Borough*

*of North Wildwood* v. *Board of Public Utilities Comm.,* 88 N. J. L. 81, 95 Atl. 749; *City and County of Denver* v. *New York Trust Co.,* 187 Fed. 890, 110 C. C. A. 24.)

The source of supply having been designated in the contract, and the quality of the water having been defined to be "as good and wholesome" as could be obtained from such source, there is no obligation on the part of the water company to filter the water or otherwise purify the same. (*City of Georgetown* v. *Georgetown Water etc. Co.,* 134 Ky. 608, 24 L. R. A. (n. s.) 303, 121 S. W. 428; *State* v. *Great Falls,* 19 Mont. 518, 49 Pac. 15; *Green* v. *Ashland Water Co.,* 101 Wis. 258, 70 Am. St. Rep. 910, 43 L. R. A. 117, 77 N. W. 722.)   Furthermore, the city having accepted the water and having made no complaint regarding the same until the commencement of this litigation, is estopped now from questioning the quality of the water. (*Cherryvale Water Co.* v. *City of Cherryvale,* 65 Kan. 219, 69 Pac. 176; *Covington Gaslight Co.* v. *City of Covington* (Ky.), 58 S. W. 805.)

*Mr. Edward Horsky* and *Mr. Elbert F. Allen,* for Respondents, submitted a brief and argued the cause orally.

Through the company's refusal to join with the city in naming a third commissioner, it failed to comply with the contract as to the mode of ascertaining the purchase price; nor did it give the option to the city which it agreed to give.   It cannot now call on a court of equity to decree specific performance. (*Town of Glenwood Springs* v. *Glenwood L. & W. Co.,* 202 Fed. 678, L. R. A. 1915C, 438, 121 C. C. A. 88; s. c., 231 U. S. 735, 58 L. Ed. 549, 34 Sup. Ct. Rep. 315.)

The agreement to renew upon terms to be mutually agreed upon twenty years later is invalid and unenforceable. (*Monahan* v. *Allen,* 47 Mont. 75, 130 Pac. 771.)   It is nothing more than simply "an agreement to enter into an agreement upon terms to be afterward settled between the parties." (*Long* v. *Needham,* 37 Mont. 408, 423, 96 Pac. 731.)   Courts cannot perfect or enforce contracts from which essential details are omitted. (*Gates* v. *Gamble,* 53 Mich. 181, 18 N. W. 631; *Gas-*

*light etc. Co.* v. *City of New Albany,* 156 Ind. 406, 59 N. E. 176; *Johnson* v. *Plotner,* 15 S. D. 154, 87 N. W. 926; *Buck* v. *Pond,* 126 Wis. 382, 105 N. W. 909; *Geer* v. *Clark,* 82 N. Y. Supp. 87, 83 App. Div. 292; *Park* v. *Minneapolis, St. P. & S. S. M. Ry. Co.,* 114 Wis. 347, 89 N. W. 532; *Morrill* v. *Tehama Cons. M. Co.,* 10 Nev. 125; *Weibert* v. *Hanan,* 136 App. Div. 388, 121 N. Y. Supp. 35; *Meyer Land Co.* v. *Pecor,* 18 S. D. 466, 101 N. W. 39; *Elks* v. *North State Ins. Co.,* 159 N. C. 619, 75 S. E. 808.)

Where by the terms of the contract the consideration is not definitely fixed, but is to be determined by arbitration or by the decision of a third person, a court of equity will not enforce specific performance until the consideration is determined. (3 Elliott on Contracts, p. 473.) Specific performance cannot be had of an executory, *ultra vires* promise of a corporation. (*Id.,* p. 476.) Alternative stipulations in a contract of the kind in question are not enforceable. (*Id.,* p. 408.) Specific performance will not be decreed where the contract is contingent upon the subsequent consent or agreement of the parties thereto. (*Glidden* v. *Korter,* 90 Me. 269, 38 Atl. 159.)

Counsel assert that "not a case was cited and none can be found holding that a contract between a city and a water company for a supply for municipal purposes, where the franchise of the water company is not exclusive, creates a monopoly except the *Davenport-Kleinschmidt Case.*" We refer to the following cases, in full comport with the justice-breathing spirit pervading the Davenport decision: *Brenham* v. *Brenham Water Co.,* 67 Tex. 545, 4 S. W. 143; *Altgelt* v. *San Antonio,* 81 Tex. 436, 13 L. R. A. 383, 17 S. W. 75; *Hartford Fire Ins. Co.* v. *City of Houston,* 102 Tex. 317, 116 S. W. 36; *Ennis Waterworks* v. *City of Ennis* (Tex. Civ.), 136 S. W. 513; *Flynn* v. *Little Falls El. & W. Co.,* 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; *Marin Water etc. Co.* v. *Sausalito,* 168 Cal. 587, 143 Pac. 767; *Long* v. *City of Duluth,* 49 Minn. 280, 51 N. W. 913; *Thrift* v. *Elizabeth City,* 122 N. C. 31, 44 L. R. A. 427, 30 S. E. 349; see note, 13 L. R. A. 383; *Gale* v. *Kalamazoo,* 23 Mich. 344, 9 Am.

Rep. 80; *National Surety Co.* v. *Kansas City etc. Co.,* 73 Kan.
196, 84 Pac. 1035; *Kirkwood* v. *Meramec Highlands Co.,* 94 Mo.
App. 637, 644, 68 S. W. 761.   The term "monopoly" includes
any contract or combination which tends to create a monopoly
and to deprive the public of the advantages which flow from
free competition.   (*Addyston Pipe & Steel Co.* v. *United States,*
175 U. S. 211, 44 L. Ed. 136, 20 Sup. Ct. Rep. 96; *United States*
v. *E. C. Knight Co.,* 156 U. S. 1, 39 L. Ed. 325, 15 Sup. Ct. Rep.
249; *Northern Securities Co.* v. *United States,* 193 U. S. 197, 332,
48 L. Ed. 679, 24 Sup. Ct. Rep. 436.)

MR. JUSTICE SANNER delivered the opinion of the court.

In August, 1889, the city of Livingston passed Ordinance No.
24, the effect of which, as amended by Ordinance No. 25 enacted
within thirty days thereafter, was to grant to C. S. Stebbins,
Isaac Orschel and Samuel Bundock, their successors or assigns,
"the privilege of constructing and maintaining waterworks in
the city of Livingston,   *   *   *   and thereby supply said city
with as good and wholesome water for public and private uses
as can be taken from the main Yellowstone River in the vicinity
of Livingston on the following terms and conditions."   The
terms and conditions which follow require that the schedule
rates set forth in the ordinance shall not be exceeded; that the
plant to be constructed shall be adequate as completed and shall
be enlarged as may be necessary; that the city shall take from
the grantees and be furnished by them with all the fire hydrants
it needs, not less than a certain minimum number, and with
water therefor, at a specified annual rental "for the full term
of twenty years"; that certain conditions touching the free use
of water by the city, the use of the public streets, avenues, alleys
and parks by the grantees, the character and extension of its
mains and laterals, the equipment of its plant, the maintenance
of a definite fire pressure, and certain other features of service,
shall be observed; and it is provided that in case the grantees or
their successors shall fail at any time and for a period of sixty
days "to comply with any material term, condition or stipula-

tion of this ordinance," unavoidable delays and accidents excepted, the city shall have the right to terminate the contract. By section 6 of the ordinance the grantees agree to give the city the option to buy the plant at any time after the expiration of twenty years from its completion, under certain conditions; and section 7 provides: "At the expiration of twenty years from date of the completion and testing of said waterworks, if the city of Livingston does not purchase said waterworks upon above terms, it shall renew the contract with said Stebbins, Orschel and Bundock, their heirs or assigns, for twenty years longer upon such terms as are mutually agreed upon at that time, provided that such shall in no case exceed the prices fixed and stipulated by this ordinance, nor shall the renewal of such contract in any case annul the operation of this ordinance in its full force, effect and control of said Stebbins, Orschel and Bundock, their heirs or assigns, as herein provided."

The plaintiff below, pleading the passage of this ordinance and the execution of an agreement to comply with its terms, further alleges that the plaintiff is the successor of the grantees named therein; that the waterworks contemplated thereby were completed and accepted in July, 1890, since which time and by means whereof the city and its inhabitants have been supplied with pure and wholesome water in accordance with the terms of said ordinance; that, although more than twenty years have since elapsed, the city has not exercised the option to purchase and has refused to renew said contract; that in the erection and maintenance of said waterworks plant large sums of money have been expended, and since the expiration of said twenty-year period the city has required the plaintiff and its predecessors in interest to make certain improvements and extensions to said waterworks system which they have done, expending large sums of money in that behalf in reliance upon said provision requiring said city to renew said contract for a period of twenty years additional; that the plaintiff is willing to agree upon a fair, reasonable and just schedule of rates to form the basis of renewal and to enter into a contract accordingly, but the city

declines and refuses to make any effort to agree upon such schedule; that in consequence thereof plaintiff is subjected to irreparable and incalculable injury—for which reasons it is prayed that the court fix such rates itself or through reference to the Public Service Commission, and that the city, its mayor and board of aldermen, be compelled to enter into a renewal of said contract.

The defendants answered, contesting the right of the plaintiff to relief on many grounds, amounting to these: That the plaintiff has not performed said contract, that said contract was unreasonable and void in its inception, and that the provisions for renewal are not enforceable.

Upon the trial, which was to the court sitting without a jury, much evidence was presented, including testimony which tended to show that in times of fire the pressure has not been adequate nor anywhere near the contract requirements, of which fact the city repeatedly complained, and that the plaintiff was not disposed to negotiate for terms of renewal save upon the basis of the same or increased rates. The trial court found that plaintiff had failed to make a case for specific performance, and that defendants were entitled to judgment on the merits. Such judgment was entered, and from it, as well as from an order denying its motion for new trial, plaintiff has appealed.

We think it unnecessary to canvass all the questions presented in this case. Clearly, the fundamental one is the force and effect of section 7 quoted above; for, unless there is a duty to renew in virtue of the provisions of this section, the other considerations suggested as supporting the judgment are relatively unimportant.

It is to be observed that the contract, as originally made, was apparently to run only for twenty years; at the end of which time the city bound itself to either purchase the plant or to "renew the contract   *   *   *   for twenty years longer upon such terms as are mutually agreed upon at that time, provided that such shall in no case exceed the prices fixed and stipulated. [1]   by this ordinance." That an agreement to enter into an

agreement upon terms to be afterward settled between the parties cannot, as a general rule, be enforced, is the settled law of this state. (Rev. Codes, sec. 6102; *Long* v. *Needham,* 37 Mont. 408, 423, 96 Pac. 731; *Monahan* v. *Allen,* 47 Mont. 75, 130 Pac. 768.) [2, 3] The appellant, conceding this, insists that "the renewal of a contract implies that the terms shall remain unchanged"; that the true meaning of the clause is "the contract was to continue for another period of twenty years, subject to an adjustment of rates"; and therefore the present case is not within the general rule above stated, but is within a recognized exception to that rule, as shown by the cases referred to below. This seeks to avoid one difficulty by encountering another equally serious. The clear contemplation of the contract, as created by the ordinance and its acceptance, is that the grantees, their successors and assigns, should have the exclusive right to supply the municipal needs of the city; and, upon the appellant's interpretation, this right is to endure for forty years, subject only to an adjustment of rates at the end of twenty years. As no such contract was within the power of the city (*Davenport* v. *Kleinschmidt,* 6 Mont. 502, 528 *et seq.,* 13 Pac. 249), we cannot assume without convincing reasons that any such contract was intended.

In point of fact, the terms of the contract comprehend other things besides rates or prices. They stipulate conditions of quality, quantity, distribution, pressure; in short, the elements that go to make up "service" supposed in 1889 to be adequate to the needs of the city for twenty years, but which the experience of that time might demonstrate to be either inadequate or unnecessary. Had it been the intention to tie the hands of the parties in relation to all these matters, leaving only the matter of rates or prices for adjustment, the statement of that intention could have been made as plain as counsel now make it in their brief. It is quite true that the terms to be agreed upon "shall in no case exceed the prices fixed and stipulated by this ordinance," but this does not make terms and prices synonymous. It merely attempts by fixing a maximum to limit the scope of any agreement upon terms, so far as the terms to be agreed upon

have to do with prices. In our opinion, therefore, the words "renew the contract" do not mean an extension of the same contract for the additional period, subject only to a rate adjustment; they were used to signify that, in case the city did not purchase the plant, there should be further contractual relations between the parties for an additional period of twenty years touching the same subject matter and having in view the same general purposes, but with such differences in terms—with all the word implies—as the experience of twenty years might lead the parties to insist upon. If this interpretation be correct, the judgment was proper, because the appellant neither alleged nor attempted to prove any disposition to agree upon terms in this sense, but only upon "a fair, reasonable and just schedule of rates."

Assuming, however, that the only terms to be agreed upon were rates, it does not follow of necessity that the stipulation to renew can be specifically enforced—and this because these terms were to be such as the parties themselves should fix. Rates or prices are generally an essential feature of a contract, though the mode of ascertaining them may not be; and, when they are left uncertain, the contract cannot be enforced unless they can be made certain by means provided in or contemplated by the contract itself. The existence within the contract of a method or means, by which uncertain terms may be made certain, forms the basis of the exception invoked, as appellant's authorities abundantly show. (See *Arnot* v. *Alexander,* 44 Mo. 25, 100 Am. Dec. 252; *Tscheider* v. *Biddle,* 5 Dill. 58, Fed. Cas. No. 14,210; *Gunton* v. *Carroll,* 101 U. S. 426, 25 L. Ed. 985; *Coles* v. *Peck,* 96 Ind. 333, 49 Am. Rep. 161; *Central Trust Co.* v. *Wabash Ry. etc.* (C. C.), 29 Fed. 546; *Joy* v. *St. Louis,* 138 U. S. 1, 34 L. Ed. 843, 11 Sup. Ct. Rep. 243; *Springer* v. *Borden,* 154 Ill. 668, 39 N. E. 603; *Union Pac. Ry. Co.* v. *Chicago, M. & St. P. Ry. Co.,* 163 U. S. 564, 41 L. Ed. 265, 16 Sup. Ct. Rep. 1173; *Kaufmann* v. *Liggett,* 209 Pa. 87, 103 Am. St. Rep. 988, 67 L. R. A. 353; *City of Fayetteville* v. *Fayetteville Water Co.* (C. C.), 135 Fed. 400; *Bristol* v. *Bristol Waterworks Co.,* 19

R. I. 413, 32 L. R. A. 740, 34 Atl. 359; *Castle Creek Water Co.* v. *Aspen,* 146 Fed. 8, 8 Ann. Cas. 660, 76 C. C. A. 516; *Slade* v. *City of Lexington,* 141 Ky. 214, 32 L. R. A. (n. s.), 201, 132 S. W. 405.)

The earliest of these cases is *Arnot* v. *Alexander;* but the oldest precedent referred to by any of them is *Hall* v. *Warren,* 9 Ves. Jr. 605, decided in 1804, and this, for present purposes, may represent the genesis of the exception in question. *Hall* v. *Warren* was a bill for specific performance of an agreement executed by Warren, to sell an advowson and estate to Hall at such price as the advowson should be valued at by Mr. Morgan, and the other premises by persons to be nominated. The principal question was the competency of Warren to contract; but, some contention having been made that the contract was not enforceable, because of uncertainty in the price to be paid, the Master of the Rolls (Sir William Grant) said: "The contract is produced and proved. Upon the face of it nothing appears to prevent execution. * * * It fixes no value upon the estate, but it provides a mode in which the value is to be ascertained that is perfectly fair and equal between them"—and he directed that issue be made and the cause be tried upon the question of sanity.

In addition to this case, *Arnot* v. *Alexander* cites two pertinent decisions from Missouri, *viz., Blackmore* v. *Boardman,* 28 Mo. 420, decided in 1859, and *Garnhart* v. *Finney,* 40 Mo. 449, 93 Am. Dec. 303, decided in 1867. In each of these cases there was involved and held enforceable a covenant for the periodical renewals of a lease, which did not fix the rentals for the renewal periods, but did provide how such rentals should be fixed, to-wit, by appraisement in the lease specially provided; and *Arnot* v. *Alexander* is itself exactly similar, except that, instead of a formal appraisement, the rentals were to be determined by the agreement of the parties or by what "any other responsible parties will agree to give." The court, deeming that to be certain which can be made certain, said: "Leaving the amount of rent for the renewal term of the lease to be ascertained by what responsible parties would agree to pay for the use of the prem-

ises fixes the rent with as much certainty a though it were to be determined by a board of appraisers to be selected by the parties to the lease.   *   *   *   The standard of valuation would be the same in both cases, to wit, the rentable market value of the premises at the time the valuation should be made.'' Upon this theory, *Tscheider* v. *Biddle, Gunton* v. *Carroll, Coles* v. *Peck, Springer* v. *Borden* and *Kaufmann* v. *Liggett* were similarly decided. They also disclose stipulations to renew leases or to convey real estate at a valuation to be fixed by appraisers; and though in nearly all of these cases the appraisement was defeated either by the refusal of the defendant to act, or by circumstances beyond the control of both parties, relief was allowed because the stipulations were held to express an intention to reach a fair and reasonable value—something capable of being made certain as well by the court as by appraisement.

Analogous to these decisions, and based either upon them or upon like considerations, are several of the other cases cited—though dealing with contracts of quite different character. *Central Trust Co.* v. *Wabash Ry.* etc., and *Joy* v. *St. Louis,* are the same—comprehending the decision on circuit and the decision on appeal. The subject matter was an agreement for a right of way across Forest Park, near St. Louis, wherein it was provided: ''Said party of the second part shall permit, under such reasonable regulations and terms as may be agreed upon, other railroads to use its right of way through the Park and up to the terminus of its road in the city of St. Louis, upon such terms and for such fair and equitable compensation to be paid to it therefor as may be agreed upon by such companies.'' The supreme court, holding the matter of ''reasonable regulations and terms'' to have been settled by contemporary agreement, disposes of the unsettled question of compensation by saying: ''Although the statement is that the compensation is to be such 'as may be agreed upon by such companies' yet the statement that it is to be 'fair and equitable' plainly brings in the element of its determination by a court of equity.'' So, too, the case of *Union Pac. Ry. Co.* v. *Chicago, M. & St. P. Ry. Co.,* enforcing

an agreement for the joint use of a railway bridge and tracks, lays emphasis on the fact that the conditions of such joint use were not only to be reasonable and just at all times, but were to be settled by referees in case the parties should not be able to agree.

In *Bristol* v. *Bristol Waterworks Co.* there was enforced a contract to install a system of waterworks and supply the town of Bristol with water for fifty years, with the proviso that the town might at its option purchase the waterworks at any time after ten and within fifteen years for a fair and reasonable price to be agreed upon by the parties or fixed by a majority of appraisers, one to be appointed by the town, one by the water-works, and the third by the two so chosen. The waterworks were installed, and at the proper time the town signified its desire to purchase; but the company refused either to negotiate or appoint an appraiser. On a suit by the town for specific per-formance, it was held that, forasmuch as the stipulation was to sell at a fair price, the manner in which such price should be ascertained was not so essential that the right of the town could be defeated by the arbitrary refusal of the company to do what it ought to do. And this ruling, with the reasoning employed to justify it, was followed in *Fayetteville* v. *Fayetteville Water Co.*, presenting a similar stipulation, and in *Castle Creek Water Co.* v. *Aspen,* wherein the valuation by appraisers was to be based upon the "productive worth" of the plant. In the last-men-tioned decision, Judge Sanborn collates the precedents, and from them concludes: "The stipulation for a determination of the price by appraisers in case of a sale was neither a condition nor the essence of the agreement nor of the contract of sale. It was an incident of each, a stipulation not of substance, but of mode. Moreover, the contract prescribes the standard by which the price shall be measured. It provides that it shall be based upon the productive worth of the waterworks, and not upon their cost. The stipulation for appraisers, therefore, is but a desig-nation of the method of the selection of those who shall take the necessary accounting, and apply this measure for the determina-.

tion of the price.  The ascertainment of this standard of meas-
urement is necessarily conditioned by an accounting of the
income and expenses of the waterworks during a reasonable
length of time anterior to the date of sale, and a calculation from
this accounting and from the net income it will disclose of the
productive worth of the property.  The consideration and set-
tlement of issues dependent upon the taking of accounts com-
posed of many items is one of the great heads of equity
jurisprudence, and the appointment of an accountant, the
examination and confirmation of his report, are the ordinary
functions of the chancellor.  The stipulation for the choice of
appraisers is therefore merely incidental to the contract of sale,
and it provides for an act which may be well and wisely per-
formed by a court of equity.''

Thus far the development and application of the exception
invoked are reasonably harmonious, since all the cases appeal to
an intention expressed in the contract to resort in the last
analysis to some standard or method other than the bargaining
of the parties themselves.  *Slade* v. *City of Lexington,* however,
is a distinct departure.  There, as here, the contract was to
furnish a city with water for a term of years, with the option
to the city to buy the plant at the end of the term, and declar-
ing that, if the city did not elect to buy, the contract should be
renewed for a further period ''on terms as mutually agreed on
at that time.''  The original period being about to expire, there
was much conference between the city authorities and the water
company, resulting in a renewal contract upon terms satisfac-
tory to both and upon which renewal the parties were then
acting.  The renewal was sought to be annulled at the suit of a
taxpayer, and the court, assuming that an agreement to renew
upon terms to be agreed upon is a nullity, sought refuge in the
exception here invoked, holding the stipulation to imply that
the terms were to be ''fair and equitable'' and so within the
cases referred to above.  To our minds, this was unnecessary.
An agreement to renew on terms to be agreed upon is simply
not enforceable, because the court cannot compel the parties to

agree nor make an agreement for them; but the uncertain term can be made certain by agreement of the parties, and, if they choose to agree, the difficulty is surmounted and the agreement is complete. In such a case no need exists for thrusting into the contract a condition not expressed by the parties nor—in our judgment—implied by them, since they reserve to themselves the right to bargain; and the right to bargain means the right to negotiate for and settle upon terms which a court might or might not consider entirely "fair and equitable." Any other conclusion vests with courts the power to make contracts for parties in every instance. There was not in that case, as there is not in this case, any intention expressed or implied to permit the settlement of the terms of renewal to be determined by any other agency than the parties themselves nor upon any other consideration than their free assent. Because in the *Slade Case* the parties did so agree and thus complete the contract, we may respect the final conclusion there declared; but, as an application of the exception here invoked, we must decline to follow it. In so doing, we conceive ourselves supported by the cases considered above as well as by other abundant authority. (Pomeroy on Specific Performance, secs. 148, 149, 150, 151, and citations; 36 Cyc., p. 959, sec. 7; *Id.*, p. 596, secs. "b" and "c," with citations; 26 Am. & Eng. Ency. of Law, 37, sec. 5.)

The suggestion is made, however, that since the law now [4] confers upon the Public Service Commission of this state the power and authority to make rates to be charged and to regulate and control the service to be given by water companies, and since the terms agreed upon for renewal by the parties, if they had agreed, would be subject to the control and regulation of that commission, the clause in question "amounts simply to an agreement for a renewal of the contract upon such terms or at such prices as said commission may prescribe." The answer is: We are here concerned with a matter of contract, and no such thing was within the contemplation of the parties when the contract was made. It is the contract which was made that is sought to be enforced; and, granting that whatever terms the

parties might have agreed upon would be subject to control by the Public Service Commission, this would not dispose of the fact that the renewal they agreed to make was one upon terms they themselves might fix.

Some stress has been laid upon the special appeal to equity [5] said to arise out of the circumstances that the construction and maintenance of the water plant have entailed great expense, and that since the expiration of the twenty-year period, the appellant and its predecessors have made costly enlargements at the behest of the city. Nothing was done within the twenty-year period that was not required by the contract to be done, and nothing that was then done can authorize the courts to command either party to now do what they cannot be compelled to do. Since that time the renewal has been the subject of negotiation or controversy, and the nearest approach to an agreement upon terms has been the appellant's expressed indisposition to consider any terms save rates, or any rates except those fixed by the ordinance or increased ones. If, therefore, the appellant and its predecessors have expended further moneys in reliance upon their view of the force and effect of the renewal clause, if they have chosen to depend upon a provision which cannot be enforced, they can hardly claim to have been misled by the conduct of the city to their prejudice. The appellant is simply left without a contract, and relegated to its rights and duties as a public utility, just as any water company is whose contract has expired. It must rest content in the fact that, possessing the only source of supply in Livingston, it may continue to furnish that city and its inhabitants with all the water needed by them, upon a fair and reasonable basis—at least until competition, lawfully established, shall compel it to share the field.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied January 25, 1917.