MARGUERITA M. FOUNTAIN, INDIVIDUALLY AND AS EXECUTRIX OF THE LAST WILL AND TESTAMENT OF CHARLES S. FOUNTAIN, DECEASED, PLAINTIFF-APPELLANT, v. FRED M. FOUNTAIN AND FOUNTAIN & SONS, INC., DEFENDANTS-RESPONDENTS.

Argued March 17, 1952—Decided June 2, 1952.

*Mr. Robert O. Bentley, Jr.,* argued the cause for appellant (*Mr. Arnold A. Hart,* attorney).

*Mr. Emil M. Wulster* argued the cause for respondents.

The opinion of the court was delivered by

HEHER, J. On June 23, 1937, plaintiff's husband, Charles S. Fountain, and his brother, the defendant Fred M. Fountain, each held 25 shares of the capital stock of Fountain & Sons, Inc., a body corporate engaged in the real estate and insurance business in Hackensack, New Jersey. These holdings constituted the entire issue of the corporate capital stock. The brothers had given full time to the management of the corporate business, then long established and of proven earning capacity. On the day given, they entered into an agreement in writing reciting that they were severally the holders of one-half of the outstanding corporate capital stock, and had by will bequeathed their respective stock holdings each to the other, and that in the event of the death "of one of the parties hereto, the surviving wife will be without adequate means to provide for her support and maintenance unless assistance is rendered out of the business" of the corporation, and "it is the desire" of the brothers that "the survivor should, within the limitations of the business, contribute toward the support of the wife of the deceased party," and providing that in the event of the death of either, "the survivor, who shall become the owner of all of the stock" of the corporation, "shall use his best efforts to arrange for the payment out of the business" of the corporation "of a weekly sum, which shall be consistent with the ability of the business to pay to the widow of the deceased party, to apply toward her maintenance and support," which "shall be within the discretion of the surviving party and shall be in recognition of the years of service rendered by

the deceased party." It was also stipulated that "While it is understood that the financial condition" of the company's "business * * * and its ability to pay will be the controlling factor, * * * it will be the aim of the surviving party to pay to the widow of the deceased party, a sum as near $200 per month as is possible," and that the agreement "is made with full confidence of each of the parties in the other to work out in good faith a solution of the expressions herein set forth." On August 3, 1946, the brothers executed a supplemental agreement reiterating their "desire" that the prior agreement be "carried out," and providing further that "the surviving party shall immediately upon the death of the other party, draw a new will, leaving the shares of stock" of the corporation "upon his (the survivor's) death, in equal shares to John M. Fountain and Fred M. Fountain, Jr.," presumably the sons, respectively, of Charles S. and Fred M.

Charles S. Fountain died March 2, 1949, leaving his will of June 23, 1937, wherein he bequeathed his holding of the corporate capital stock to his brother Fred M., and the residue of his estate, after payment of debts and funeral expenses, to his wife, whom he designated executrix of the will. At the time of the death of Charles S., the stock holdings of the brothers remained unchanged, but there were then 20 additional shares outstanding, ten shares held by the son of Charles S. and the same number by the son of Fred M.

The complaint is submitted by the widow of Charles S. Fountain, individually and as his executrix. It is therein alleged that the surviving brother, Fred M., has made but two payments to the plaintiff widow for her support and maintenance, $34.30 each on March 4 and 11, 1949; that thereafter he refused performance of the agreement, although the corporation "was and is able to pay" the stipulated weekly sum to plaintiff, and plaintiff "has offered and has always been ready and willing" to deliver the testator's stock to his surviving brother "upon the settlement" of the estate and the issuance of an inheritance tax waiver; and that the surviving brother has "the control and manage-

ment of the business and affairs" of the company. Imprudent and unlawful salary increases and disbursements of corporate funds in derogation of the plaintiff widow's contractual right of support are charged. There is also a count for unpaid salary due the testator from the corporation in an amount then unknown to plaintiff. Specific performance of the agreement and discovery and an accounting are sought; also, an injunction against the payment to the individual defendant Fountain of "salary or moneys in excess of those paid to him" by the corporation prior to the death of his brother, until the weekly sums provided for in the agreement shall have been paid to plaintiff. The defendant Fountain interposed a counterclaim for the delivery of the testator's stock in accordance with the will. The answer to the counterclaim pleaded insufficient assets to satisfy the testator's debts and the cost of administration, and plaintiff's willingness to turn over the stock upon the settlement of the estate "and within the time required by law for such delivery, * * * which time has not arrived," and at any time if the defendant Fountain will pay the amount necessary to meet the testator's debts and the administration expenses.

The judge of the Superior Court in a written memorandum ruled that plaintiff's "claim is, at present, without merit," in that the individual defendant Fountain's obligations under the contract, if the contract be "one which the court could order specifically performed," are conditioned upon the transfer to him of the corporate capital stock held by his deceased brother, and since plaintiff "asserts her inability to deliver the stock," she is "in default" and "will not be heard to complain of defendant's derelictions." Later, on the motion of plaintiff for additional findings of fact in respect of the claim for salary, it was found that plaintiff "failed to prove that there was any salary due the decedent." There was a finding also that the counterclaim is, "at present, without merit." The complaint and the counterclaim were dismissed "without prejudice." Plaintiff appeals, both individually and in her fiduciary capacity.

The contention of defendants is that "if the agreement is enforceable," the proofs "showed clearly that payment could not be made 'within the limitations of the business' and there existed no ability to pay"; and that the judgment of dismissal is without prejudice and "plaintiff may again, if the business warrants, come into court."

This was not the ground taken by the hearing judge. The judgment of dismissal in this behalf was rested upon the hypothesis that the contract imposed no obligation upon the individual defendant Fountain until the corporate capital stock held by his brother was transferred to him, and plaintiff had defaulted in the performance of the condition. True, the articles of agreement, by clear implication if not indeed by explicit terms, presuppose the rendition of the stipulated payments for the support and maintenance of the widow of the deceased stockholder "out of the business" of a company whose beneficial ownership and control had passed to the surviving brother by the transfer of the deceased brother's stock. Yet there is no basis whatever in the proofs for the finding that plaintiff had been guilty of a default which excused performance of the contract by the surviving brother. The time for the closing of the deceased brother's estate and the transfer of his stock had not arrived. There was a shortage of $350 in the amount needed to pay the debts of the estate. But it is conceded that the corporation's books of account reveal a credit to the testator of $687 for unpaid salary. The insistence is that this amount was "only payable if earned by the corporation" and the "statements of income, profit and loss for the three years prior to decedent's death, showed substantial operating loss and a deficit of $21,788.56," and so the corporation was and is unable to pay the accrued salary or to meet the obligations imposed by the contract. It is the contention of plaintiff that defendants, by the improper diversion of moneys "available for the purpose to the personal use" of the individual defendant Fountain, "and of others," and by "prodigal expenditures without regard to the rights of plaintiff," have

disabled the corporation in this regard and "thus, designedly or otherwise, prevented performance of and breached the agreement." Plaintiff cites the payment of Christmas bonuses and vacation moneys to the company's staff, including the defendant Fountain himself, the provision of medical service for the surviving brother's sister, and other disbursements in payment of the surviving brother's dues for membership in golf and other clubs and for entertainment, increases in the salaries of employees, and so on, aggregating $4,386.97 between the time of the deceased brother's death and the trial of the cause; also, excessive salary payments to the surviving brother aggregating $6,391.25 during the same period.

The hearing judge did not determine the issue of "the ability of the business to pay" the moneys contemplated by the contract; and there were no specific findings respecting the claim of unpaid salary. The resolution of these questions is essential to an adjudication of the rights and obligations of the parties and the application of the remedies appropriate to their fulfillment.

█ It is requisite that there be a reasonable exercise of the stipulated "discretion of the surviving party" in assessing the corporation's "ability to pay" according to the standard provided by the terms of the promise. Arbitrary or capricious action or bad faith would constitute a remediable violation of the obligation of the contract. A palpable abuse of the contractual discretion or a plain and obvious error of judgment that would defeat performance of the contract are equally redressable. This is elementary principle in the law of contracts. It is peculiarly a case for the equitable remedy of specific performance, to "do more perfect and complete justice." *Wilson v. Northampton, etc., R'y, L. R. 9 Ch.* 279, 284.

██ The promise is not too indefinite for enforcement. If a promise such as this is capable of being made certain by an objective standard, as, for example, extrinsic facts, it is enforceable. *Williston on Contracts (Rev. ed.), sec.* 41.

A promise is not open to the objection of indefiniteness "so long as the parties can tell when it has been performed, and it is enough if, when the time arrives, there shall be in existence some standard by which that can be tested," apart from the promisee's will, exercised *ad hoc*. *Moon Motor Car Co. of New York v. Moon Motor Car Co. Inc., 29 Fed. 2d 3 (C. C. A. 2 1928)*. A promise for services that a testator would leave the promisee "full and plenty after he was gone so that she need not work" was enforced as an obligation to provide an amount sufficient to buy an annuity that would support the promisee in the mode of life to which she had been accustomed. *Thompson v. Stevens, 71 Pa. 161 (Sup. Ct. 1872)*.

■ There is an obligation enforceable in equity if the stipulated payments be ascertained or rendered ascertainable by a certain and definite standard laid down in the contract. *Joy v. City of St. Louis, 138 U. S. 1, 11 S. Ct. 243, 34 L. Ed. 843 (1890)*; *Hayes v. O'Brien, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555 (Sup. Ct. 1894)*; *Livingston Waterworks v. City of Livingston, 53 Mont. 1, 162 Pac. 381 (Sup. Ct. 1916)*. *Vide* 117 *A. L. R.* 1095. Where the writing prescribes a definite mode of ascertainment, there is not such want of certainty in an essential ingredient of the contract as to preclude specific performance. The obligation is not in that circumstance dependent upon the subsequent determination of the parties and therefore within the general rule barring equitable enforcement. *Young v. Nelson, 121 Wash. 285, 209 Pac. 515; 30 A. L. R. 568 (Sup. Ct. Wash. 1922)*; *Kaufmann v. Liggett, 209 Pa. 87, 58 A. 129, 67 L. R. A. 353 (Sup. Ct. 1904)*. If there be sufficient expressed to constitute "a legally valid contract," a court of equity can make certain by its decree, within reasonable limits, subordinate details of performance which the contract itself does not express; the uncertainty as to terms of payment must be so great as to prevent the existence of a contract. *Williston on Contracts (Rev. ed.), sec. 1424.*

Promises to pay "when able" have been construed to imply an obligation to use reasonable means to become able. *Nunez v. Dautel,* 19 *Wall.* 560, 22 *L. Ed.* 161 (1874). At all events, a promise to pay when able, if it does not create liability earlier, becomes enforceable when the ability exists; and if one who promises to pay when able has prevented himself from becoming able, the happening of the condition will be excused. *Williston on Contracts (Rev. ed.),* sec. 804.

▆▆ And in the particular circumstances the current inability of plaintiff to deliver the testator's stock to the defendant Fountain is not fatal to relief by a specific enforcement. Plaintiff has not been guilty of neglect or willful default. The accounting may yield sufficient to satisfy the salary claim and thus to liquidate all the outstanding obligations of the deceased brother's estate. Plaintiff's performance can be provided for in the decree. Time of performance is not of the essence. And the delay has not worked prejudice to the individual defendant. Compare *Young's Administrator v. Rathbone,* 16 *N. J. Eq.* 224 (*Ch.* 1863). Even where time is essential by the terms of the contract, the failure of performance of a condition precedent is not necessarily a bar to a specific performance where there is a subsequent performance without undue delay and enforcement would not for any reason be unjust or inequitable. *Cheney v. Libby,* 134 *U. S.* 68, 10 *S. Ct.* 498, 33 *L. Ed.* 818 (1889); *Kilmer v. British Columbia Orchard Lands,* (1913) .1. *C.* 319. Here, the individual defendant Fountain, by his counterclaim for the delivery of the deceased's capital stock, also invokes the remedy of specific performance, for the bequest of the stock to him was obviously in execution of the agreement formalized in the writing made the basis of the complaint.

▆ While the point of nonjoinder is not made, the subsequent several issues of capital stock of this family corporation to the sons of the Fountain brothers may well have given rise to a beneficial interest which entitles them to be heard on the issues joined in this proceeding. In equity, a

corporation is deemed an aggregation of individuals, a statutory partnership with assignable membership and limited liability of the members, whose beneficial interests *inter se* are treated according to the dictates of equity and justice where the rights of the public or third persons are in nowise involved. *Whitfield v. Kern,* 122 *N. J. Eq.* 332 (*E. & A.* 1937). See, also, *Metropolitan Holding Co. v. Snyder,* 79 *Fed. 2d* 263, 103 *A. L. R.* 912 (*C. C. A.* 8 1935).

The judgment is reversed; and the cause is remanded for further proceedings conformably to the principles of this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and BURLING—5.

*For affirmance*—None.